ROYAL AIR PROPERTIES, INC., a Corporation, Harold L. Heathman and Madge I. Heathman, Appellants,

v.

R. Philip SMITH, Appellee.

No. 17900.

United States Court of Appeals
Ninth Circuit.

Dec. 20, 1962.

Ralph B. Potts, Seattle, Wash., for appellants.

Bogle, Bogle & Gates, Walter B. Williams, and Edward G. Lowry, III, Seattle, Wash., for appellee.

Before ORR, JERTBERG and MERRILL, Circuit Judges.

ORR, Circuit Judge.

Having in mind the construction of luxury apartments in Palm Springs, California, one Meade Hargiss interested appellant Harold L. Heathman, his sister Esther Peister and his son Michael Heathman in the project; and as a consequence a corporation, Royal Air Properties, Inc., was formed. In furtherance of bringing the objective of the plan to fruition the corporation acquired a seven-acre tract in Palm Springs for a purchase price of $235,000. The sum of $70,000 was paid as a down payment; the remainder was to be paid within two years.

From September 1956 through March 1957 plans were being worked out for the construction of seventy-one luxury apartment units and other facilities. One apartment unit was completed about the end of March 1957.

In the fall or winter of 1956, appellee Smith learned of the project that Royal Air Properties was undertaking. To the person from whom he had received the information as to the Royal Air project, he expressed an interest in obtaining an apartment in Palm Springs. Shortly thereafter he was contacted by Harold Heathman with the purpose of getting him (Smith) interested in purchasing an apartment in the Royal Air project. During the next several months Smith received letters and literature from Heathman describing the Royal Air development. On April 27, 1957 Dr. Smith made a trip to Palm Springs and remained there until April 30th of the same year. He was conducted over the Royal Air project by Harold Heathman and was solicited by said Heathman to purchase stock in said Royal Air Properties. Responsive to this solicitation Smith, on or about May 16, 1957, purchased five hundred shares of the stock of Royal Air Properties and paid the sum of $50,000 therefor. This money was borrowed and Smith has paid interest thereon in excess of $11,000.

From September 12, 1956 to April 12, 1957 Meade Hargiss was President of Royal Air Properties. He was removed from said office by the Board of Directors on April 12, 1957 and offered the position of Chairman of the Board. He declined the offer and resigned as a Director.

Harold Heathman was elected President. Hargiss gave Heathman a letter demanding payment of a loan he had made to the corporation and refusing to accept stock in the corporation in payment thereof. Heathman did not inform Smith of this letter or of its contents prior to his purchasing stock in the corporation.

During the time Dr. Smith was in Palm Springs from April 27 to April 30, 1957, he was given a "Land Use Analysis—Proposed Development Plan" by Harold Heathman. In this prospectus estimates of profits and of "return to investor" were made without considering the cost of the land that the corporation was proposing to develop. Also no mention was made of the $165,000 mortgage (trust deed) on the land or the provision for its payment ($82,500 was due in less than five months and the balance within seventeen months).

In addition to the sample unit, the corporation completed but one six-unit building. In January 1958, a month after the above building had been constructed, the property of the corporation was attached as a part of the action brought by Hargiss in an effort to recover the money he had loaned the corporation. Eventually the entire tract was sold at a substantial loss, and the assets of the corporation were liquidated. Subsequent to the liquidation of the company Dr. Smith brought a suit under the provisions of section 10 of the Securities Exchange Act of 1934, as amended, 15 U.S.C.A. § 78j and Rule X–10B–5 (now Rule 10b–5) of the rules and regulations issued by the Securities and Exchange Commission under that Act, 17 C.F.R. § 240.10b–5. The suit was also based on sections 20 and 29 of the same Act, 15 U.S.C.A. §§ 78t(a) and 78cc.

Notwithstanding the fact that neither section 10 nor Rule 10b–5 expressly provide a civil remedy, we have held that a civil cause of action may be brought to enforce this section of the Act. Errion v. Connell, 236 F.2d 447 (9th Cir., 1956); Fratt v. Robinson, 203 F.2d 627, 37 A. L.R.2d 636 (9th Cir., 1953). While the above cited cases involved sellers of securities, we later held that a civil remedy is also available to a purchaser of securities. Ellis v. Carter, 291 F.2d 270 (9th Cir., 1961); Matheson v. Armbrust, 284 F.2d 670 (9th Cir., 1960).

In an action brought under section 10(b), common law fraud need not be alleged or ultimately proved. After establishing the use of some means of interstate commerce, the mails, or any national stock exchange facility (this is conceded in the instant case), Rule 10b–5 (b), a proper implementation of section 10(b), only requires proof of a material misstatement or an omission of a material fact in connection with the purchase or sale of any security to make out a prima facie case. See Ellis v. Carter, supra, 291 F.2d at 274; Matheson v. Armbrust, supra, 284 F.2d at 673.

The trial court found that appellants failed and omitted to inform Dr. Smith of Hargiss' resignation and demand for repayment of his money prior to Dr. Smith's purchase of stock, said facts being material and necessary in order to prevent the information given by appellants to Dr. Smith from being misleading. The trial court also found that the prospectus given Dr. Smith by appellant Heathman misrepresented material facts. Either of these misrepresentations would prima facie establish a violation of Rule 10b–5(b), and section 10(b).

Appellee, having established a prima facie violation of section 10(b) of the Act, rested. Appellants then undertook to introduce evidence with the purpose of establishing the affirmative defenses of estoppel, waiver and laches. Appellants offered to prove that the appellee was elected a member of the Board of Directors of the corporation on May 9, 1957 and subsequently was elected President on June 5, 1958; that appellee had his own attorney advising him and attending meetings of the Board of Directors while appellee served as a Director; and that appellee sought an option to acquire the stock of Harold Heathman and Esther Peister.

Appellants' purpose was to establish that appellee knew or, as a reasonable man, should have known of the misstate-

ments and omissions upon which he based this action approximately two years before suit was brought; but instead of taking action when he learned all the facts, appellee waited in anticipation of a probable profit from his investment. He appeared satisfied with his stock purchase until the corporation ran into difficulties; he then tried to gain control of the corporation, and when this failed and the property was sold for a loss, he decided to charge fraud. The trial court decided that the proffered defenses were not available. In this we think it was in error.

■ Estoppel and waiver are defenses to a civil action brought under sections 10(b) and 29(b) of the Securities Exchange Act of 1934. In Straley v. Universal Uranium and Milling Corp., 289 F.2d 370 (9th Cir., 1961), we held that these defenses were applicable to an action brought under the Securities Act of 1933, 15 U.S.C.A. §§ 77e and 77l(1). It is argued that the Straley case does not hold that these defenses are available under the above mentioned sections of the Securities Act of 1933. We do not so read the decision. It is true that the Court stated that the only question before it at the time was whether the defense of laches was available under the circumstances of the case; but it is implicit in the Court's holding that waiver and estoppel were proper defenses—otherwise it would not have remanded the case to permit their presentation as defenses. See Straley v. Universal Uranium and Milling Corp., 312 F.2d 745 (9th Cir., 1962).

In the Straley case we said that estoppel and waiver "are available to one against whom an action at law is brought on a contract declared voidable by common law. On principle, we see no reason why such defenses would not likewise be available to one against whom an action is brought on a contract declared voidable by judicial construction of a statute. There is nothing in the language of Section 77l or its legislative history to indicate that Congress intended to create a right enforceable in law or in equity not subject to defenses available at law or in equity to an action based on a voidable contract. The silence of Congress cannot be construed as an intention to make such defenses unavailable." 289 F.2d at 373–374. This reasoning is also applicable to an action brought under sections 10(b) and 29(b) of the Securities Exchange Act of 1934.

■ Appellee seeks to distinguish the Straley case on the ground that the transaction in that case was voidable while section 29(b) of the Securities Exchange Act of 1934 renders the transaction in the present case void. Although section 29 (b) declares such illegal contracts void as regards the rights of any violator, it does not make such contracts void as regards the rights of the innocent party to the contract. See Bankers Life and Casualty Co. v. Bellanca Corp., 288 F.2d 784, 787 (7th Cir., 1961). The defrauded party has to bring a suit to rescind; the contract is voidable as to his rights since he can keep the stock or sue to rescind the sale. When he sues, the normal defenses come into operation. Since the buyer can elect to retain his investment, we see no reason why he can not waive his statutory right to rescind or be estopped from asserting such right.

■ Although Congress specifically provided a civil remedy for violation of 15 U.S.C.A. § 77e in 15 U.S.C.A. § 77l (1), no such remedy was expressly provided for a violation of section 10(b) of the 1934 Act. Since civil liability was judicially implied, the appropriate common law defenses should be applicable. It would be inconsistent to apply these defenses to a remedy specifically provided by Congress and not to a remedy judicially inferred from an act of Congress. Since courts generally interpret statutes in the context of the common law and Congress has not specifically denied the availability of these defenses, we see no reason why the ordinary defenses of estoppel and waiver should not be applicable. The purpose of the Securities Exchange Act is to protect the innocent investor, not one who loses his innocence

and then waits to see how his investment turns out before he decides to invoke the provisions of the Act. See Carr v. Warner, 137 F.Supp. 611, 615 (D. Mass.1955); Nash v. J. Arthur Warner & Co., 137 F.Supp. 615, 618 (D.Mass. 1955); cf. Goldenberg v. Bache & Co., 270 F.2d 675, 681 (5th Cir., 1959).

■ In an action brought under section 10(b) of the Securities Exchange Act of 1934 there is no federal statute of limitations. In Fratt v. Robinson, supra, we applied the applicable state statute of limitations; we have not determined whether laches is also available in a section 10(b) action. Since the right of action created for a violation of section 10(b) may be enforced at law or in equity, it should be subject to the doctrine of laches as well as the statute of limitations. The applicable period of limitation should not depend "on the turn of a word fixed by a plaintiff at the pleading stage. * * * In the final analysis, recourse should be had not to the language of the pleader's Complaint but to the terms of the federal act granting the right of action and to the remedy which the court can supply. The decisive feature, then, which gives jurisdiction the flavor of concurrency, is not the narrow question of whether formal relief requested in a particular action is equitable or legal, primary or incidental, but the broader determination of whether the federal right in issue may be judicially enforced in any action by means both legal and equitable." Tobacco and Allied Stocks v. Transamerica Corp., 143 F.Supp. 323, 327 (D.Del.1956), aff'd without consideration of the point, 244 F.2d 902 (3rd Cir., 1957).

■ In Straley we held that laches was not a bar to an action brought under the Securities Act of 1933, 15 U.S.C.A. §§ 77e and 77l(1). But the cause of action in Straley was governed by a federal statute of limitations, 15 U.S.C.A. § 77m. Where Congress has provided a specific and relatively short statute of limitations, it can be inferred that the federally created limitation is not to be cut short; in other words, the buyer may do what he likes as long as he brings his suit within the stipulated period. But where there is no applicable federal statute of limitations, as in a section 10(b) action, there is no evidence of Congressional intent to exclude the traditional doctrine of laches. See 3 LOSS, SECURITIES REGULATION 1777–1778, n. 326.

■ Having determined that the defenses of estoppel, waiver and laches are available to appellants, we are met with the argument that even though the proffered evidence were improperly excluded, the appellants have shown no prejudice therefrom. This is a matter for the trial court in the first instance.

In summarizing the evidence which we think the trial court should have admitted, we express no opinion as to its weight and sufficiency.

The case is reversed and remanded for further proceedings consistent with this. opinion.