**SKYWAY AVIATION CORPORATION, a Nebraska corporation, Appellant,**

v.

**MINNEAPOLIS, NORTHFIELD AND SOUTHERN RAILWAY COMPANY, a corporation, Appellee.**

No. 17314.

United States Court of Appeals
Eighth Circuit.

Jan. 27, 1964.

Harold E. Farnes of Farnes & Skaar, Minneapolis, Minn., made argument for the appellant and filed brief.

Irving C. Iverson, Minneapolis, Minn., made argument for the appellee and filed brief with Iverson, Coulter & Nelson, Minneapolis, Minn.

Before MATTHES and MEHAFFY, Circuit Judges, and MICKELSON, District Judge.

MEHAFFY, Circuit Judge.

Plaintiff Minneapolis, Northfield and Southern Railway Company, a Minnesota corporation, brought this action against defendant Skyway Aviation Corporation, a Nebraska corporation, for property damage resulting from a midair collision between its airplane and an airplane of the defendant while approaching the Flying Cloud Airport at Hopkins, Minnesota, preparatory to landing.

Plaintiff alleged negligence on the part of defendant for failure to yield the right of way and failure to keep a proper lookout. Defendant denied all the material allegations of the complaint with the exception of the allegation that defendant's pilot was in the course of his employment. Defendant counterclaimed alleging negligence on the part of the

plaintiff as the cause of the collision and sought recovery for damages to its aircraft. Plaintiff denied generally the allegations of defendant's counterclaim, specifically refuting the claim that its aircraft was being operated by the pilot as its employee or agent in the course and scope of his employment.

Both pilots were killed; however, this action involves only the issue of property damage to the demolished aircraft. Both aircraft were light, single engine planes, the plaintiff's being a Cessna 210 and the defendant's a Cessna 195.

The Flying Cloud Airport is owned by the Minneapolis-St. Paul Metropolitan Airport Commission, whose regulations, in conjunction with the Federal Civil Air Regulations, govern the operation of aircraft at the field. Pertinent regulations of each agency were in evidence by way of stipulated exhibits.

Flying Cloud Airport has no tower control and the runway use is indicated on a wind T, an indicator on the ground in the shape of an airplane pointing into the wind on the runway to be utilized. The collision occurred in the late afternoon as both planes approached runway 18 for landing. The visibility at the time was described as unlimited. There was only a very light wind—five to seven miles per hour—which had no effect on the aircrafts' operation.

The collision was witnessed by several persons on the ground and in other airborne aircraft. It was undisputed that defendant's plane approached the landing strip from a higher altitude and from the rear of plaintiff's plane. It contacted plaintiff's plane from above, shearing the tail fuselage of plaintiff's plane, and resulting in both planes plummeting to the ground. Defendant contended that plaintiff's plane began its descent for landing beneath the minimum altitude prescribed by local and federal regulations and was in an improper, "straight-in approach" position at the time of the collision making it impossible to be seen by defendant's pilot due to the inherent design of defendant's plane.

Each party produced eyewitnesses, but there was a conflict in their testimony as to the altitude of the planes, their point of entry into the flight pattern, and the pattern which each plane had followed in arriving at its approach for landing.

By agreement of counsel, issues of negligence, causation, and extent of damage were submitted to the jury by a special verdict as authorized under Federal Rules of Civil Procedure 49(a) with the stipulation that the court make findings on the non-submitted issues.

After extended deliberation, the jury reported that it was deadlocked on one interrogatory but had answered the remainder unanimously. By agreement of counsel, the court inspected the jury's verdict although incomplete as to one of the questions propounded. The court concluded all pertinent questions had been answered and entered judgment for the plaintiff. The pertinent portion of the special verdict and the defendant's corresponding objection are as follows:

## "SPECIAL VERDICT.

"We, the jury, make answers to the questions submitted as follows:

"1. Was the operator of the Cessna 195 aircraft negligent? Answer: Yes.

"2. If so, was such negligence a proximate cause of the accident? Answer: Yes.

"3. Was the operator of the Cessna 210 aircraft negligent? There is no answer.

"4. If so, was such negligence a proximate cause of the accident? Answer: No.

\* \* \*

"Mr. Farnes: At this time I would have to enter an objection to the reception of this verdict at this time.

"The Court: Tell me why?

"Mr. Farnes: In that question No. 3 has not been answered.

"The Court: Even if they answered it yes or no, does it make any difference as long as they say that there

was no proximate causation between that negligence and the accident?

"Mr. Farnes: As long as there would be a question in the minds of these people whether or not there was negligence or lack of it, it would appear that the application of the principle of proximate cause might also be subject to change."

For reversal, defendant contends that the court erred:

(1) In accepting the incomplete special verdict.

(2) In admitting testimony of aviators with respect to the airfield's flight regulations.

(3) In its instructions to the jury on causation and the applicability of governing flight regulations.

(4) In refusing to allow the jury to have a view of the types of aircraft involved in the case.

*The Special Verdict*: During the course of the trial, the trial court and the parties' counsel discussed proposed instructions. An outgrowth of this discussion in which plaintiff raised certain defenses to defendant's counterclaim based on the law of agency and bailment was the agreement that Rule 49(a), Fed. R.Civ.P. should be invoked utilizing the aforementioned special verdict with the court making whatever additional findings necessary.

There is evidence in the record that would have justified a finding by the jury that plaintiff violated a flight regulation during the early stage of its entry into the flight pattern but before it commenced its final approach.

It mattered not that the jury was deadlocked on the special verdict's unanswered question with respect to this issue of plaintiff's negligence inasmuch as the jury must have agreed that even if plaintiff's violation of the rules amounted to negligence, it did not constitute a proximate cause of the collision. Plaintiff's negligence has no bearing on the ultimate decision of this case since the finders of fact held there was no causal connection between any negligence of plaintiff and

the ensuing collision. Defendant's argument to the contrary is grounded chiefly on Union Pacific R.R. v. Bridal Veil Lumber Co., 219 F.2d 825 (9th Cir. 1955), cert. denied 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 849 (1956). The rationale of Union Pacific distinguishes its holding as authority for vitiating the verdict in the instant case. In that decision, the jury not only left unanswered an interrogatory on defendant's negligence but also omitted passing on an issue pertaining to the cause of the accident. As the Ninth Circuit stated, this evidenced disagreement on a vital question and "left a gaping hole in the special verdict". The court concluded it was, therefore, error for the trial court to "go it alone" and dispose of the case.

A decision more apropos is Gulf Refining Co. v. Fetschan, 130 F.2d 129, 135 (6th Cir. 1942), cert. denied 318 U.S. 764, 63 S.Ct. 666, 87 L.Ed. 1136 (1942), in which the reviewing court permitted a general verdict to stand under Rule 49(b) Fed.R.Civ.P., despite several unanswered, accompanying interrogatories:

"The failure to answer interrogatories is not fatal where the general verdict can be supported on other facts, or where answers to such questions, favorable to the party against whom judgment is rendered, would not necessarily render the judgment erroneous."

Thus, if the jury had answered the question in issue affirmatively, which the trial court pointed out was the most favorable answer defendant could have wished for, the same conclusion would have resulted by reason of the jury's unanimously finding that plaintiff's negligence did not constitute a proximate cause of the collision.

This was a proper case to invoke Rule 49(a) as it simplified the issues for the jury. The answers and the special verdict were not conflicting or inconsistent. The failure to agree on the unanswered interrogatory did not vitiate the otherwise unanimous verdict effectively disposing of the issues submitted.

*Admissibility of Evidence*: Defendant contends that certain testimony of four aviators was inadmissibile as it derogated from applicable local and federal flight regulations, which, as stipulated exhibits, spoke for themselves. The witnesses were licensed pilots with innumerable hours of flying time to their credit, many of which were obtained utilizing the Flying Cloud Airport. Suffice it to say, that the qualifications of these pilots as experts in the art of flying is founded upon evidence of years of experience.

The applicable flying regulations and facts surrounding the collision itself are inseparably intwined with terms knowledgeable only to a person experienced in aviation. In most instances their testimony consisted of: (1) near verbatim repetition of certain rules; (2) specific explanations of generally worded rules as practically applied at the Flying Cloud Airport, such as the proper altitude to begin a "normal approach" in conformity with local landing regulations; and (3) their opinions with respect to whether or not the colliding aircraft maintained the proper flight pattern based on the respective plane's elevation and position when observed.

The first category of testimony covered by defendant's blanket objection may have been cumulative in view of the rules' previous admission into evidence, but it was hardly prejudicial to defendant since both parties stood to profit from the jury's enlightenment through accurate, unbiased, interpretation of the stipulated rules' technical meaning. As to the second area of objection, it is significant that both the local and federal rules are lacking in specificity, since many touch upon the subject of safety and of necessity cannot be particularized to cover every contingency. For example, a local landing regulation requires maintenance of an altitude of 1700 feet Mean Sea Level, equivalent to 800 feet above ground, until necessary for a normal approach for landing. No rule could spell out where every plane must reduce altitude for normal approach as it is common knowledge that what is "normal" would depend on numerous factors, i. e., the size and type of plane, landing speed, availability of landing flaps, the weight of the cargo, the number of aircraft in the landing pattern and their proximity. Therefore, normal approach might necessitate different planes, in conjunction with varying combinations of the above factors, reducing their altitudes at different phases of the landing pattern. Testimony of skilled aviators as to the practical application of these factors to an aircraft landing at Flying Cloud Airport did not alter or modify this rule's requirement but rather correlated its significance to the instant case.

And finally, defendant specifically objects to these witnesses' describing plaintiff's plane as executing a normal approach on the grounds a witness is prohibited from giving his opinion on questions of law, in this instance, the minimum altitude and direction of approach prescribed by the local flight regulations. Citing Briney v. Tristate Mutual Grain Dealers Fire Ins. Co., 254 Iowa 673, 117 N.W.2d 889 (1962). This general principle of law is sound; however, it does not control the admissibility of the questioned testimony in the case at bar. The testimony was not tantamount to a legal opinion conflicting with the broadly phrased flight rules, but represented qualified experts' opinions concerning the question of the defendant aircraft's, as well as plaintiff's, adherence to proper landing procedures. Their eyewitness accounts of one or both of the two planes' landing position in the pattern at the time observed and their respective elevations, judged by their own extensive flying experience and knowledge of the pertinent regulations, justified their opinions being considered by the jury. The applicable rule of evidence which does control their testimony's admissibility is defined in Phillips Petroleum Co. v. Payne Oil Corp., 146 F.2d 546, 547 (10th Cir. 1944):

"A witness possessed of special training, experience, or observation in respect to the matter under investigation may testify as to his

opinion when it will tend to aid the jury in reaching a correct conclusion."

■ This was such a case where the competent expert testimony complained of stood to serve its ultimate purpose of aiding the jury to render a fair decision in a case involving complex aeronautical terms and regulations. Its admissibility is not prejudicial error.

■ *Instructions*: The principal objection to the instructions relates to the following excerpt from the court's charge:

"I should invite your attention to the fact that there was certain testimony here and arguments made with reference to blind spots in some of these planes with reference to whether or not the surface of the ground at that point might have served as a camouflage to make visibility poor. In connection with that, I advise you that the fact that the pilot of the Cessna 195 may not have seen the Cessna 210 aircraft by reason of the camouflage effect of aircraft coloring and the surrounding terrain, or because of the position of the pilot making it difficult to see the lower aircraft, does not excuse his failure to comply with the right-of-way rule or any of these rules to which I have made reference. So that is to guide you in answering the questions with reference to negligence and proximate cause."

This instruction is based on the pertinent provisions of the federal Civil Air Regulations Air Traffic Rules, 14 CFR, part 60, Section 60.14(b), (d) and (e).[1]

In United States v. Miller, 303 F.2d 703 (9th Cir. 1962), cert. denied 371 U.S. 955, 83 S.Ct. 507, 9 L.Ed.2d 502 (1963), also involving a midair collision of two aircraft, the court applied the CAA right-of-way rule in barring the plaintiff from recovery due to his violation thereof in his suit against the government based on the control tower's alleged negligence. The court spelled out the pilot's standard of care:

"It may be that in order to have seen the Cessna against this background Miller would have had to look thoroughly and diligently in the area in which the Cessna was flying. But if this is the degree of care required of the ordinarily prudent pilot, then such is the standard to which Miller must be held. We believe that this is the standard imposed by the rules, and it is not for the courts to say that the standard is too exacting.

"Miller knew, or should have known, that the greatest likelihood of conflicting traffic would come from the precise area in which the Cessna was flying. He should have anticipated the possibility of aircraft on the crosswind leg of the traffic pattern, and should have made a thorough surveillance of that area his prime concern.

\*　　\*　　\*　　\*　　\*

"We conclude that neither because of the camouflage effect of the background, nor the position of Miller

---

1. Section 60.14(b): *"Converging . . .* When two or more aircraft of the same category are converging at approximately the same altitude, each aircraft shall give way to the other which is on its right. . . ."

\* \* \*

Section 60.14(d): *"Overtaking.* An aircraft that is being overtaken has the right-of-way, and the overtaking aircraft, whether climbing, descending, or in horizontal flight, shall keep out of the way of the other aircraft by altering its course to the right, and no subsequent changes in the relative positions of the two aircraft shall absolve the overtaking aircraft from this obligation until it is entirely past and clear."

Section 60.14(e): *"Landing.* Aircraft, while on final approach to land, or while landing, have the right-of-way over other aircraft in flight *or operating on the surface.* When two or more aircraft are approaching an airport for the purpose of landing, the aircraft at the lower altitude has the right-of-way, but it shall not take advantage of this rule to cut in front of another which is on final approach to land, or to overtake that aircraft."

in the left seat of a left-banking plane, was Miller excused from according the Cessna the right of way * * *." United States v. Miller, supra 303 F.2d at 708–709.

The regulations forming the basis for the instruction in the instant case are identical with the regulations referred to in the Miller case. In neither case is an extraordinary duty of care imposed.

Defendant cites no authority in support of its complaint that the instruction "created an impression the defendant's pilot had an extraordinary duty of care", but simply distinguishes this case factually from the Miller case. Defendant contends that the plaintiff's pilot made an improper straight-in approach beneath the prescribed altitude which in effect relieved defendant of the duty of reasonable lookout and yield of right-of-way to unanticipated planes not in the proper flight pattern. However, there is a strong, factual comparison in both cases. A preponderance of the evidence does not support the conclusion the approach of plaintiff's plane was anything but proper. The accident occurred while both planes were well within the final leg of the traffic pattern. Defendant's plane approached plaintiff's plane from above and behind, making contact with it as they were both at greatly reduced altitudes preparatory to landing on the same runway. The only significant distinguishing fact is that in Miller there was a control tower while none at Flying Cloud. But this is all the more reason why defendant's pilot was required to abide by the right-of-way rules since he was aware of the fact that there were no control tower operators to assist him in his landing.

Therefore, we find the instruction complained of proper, producing no prejudicial error in the minds of the jurors.

The defendant further submits that the court should have instructed the jury there could be two proximate causes of the accident. It was only after the case had been argued and the court's charge given that any allusion to such an instruction was made. Out of the hearing of the jury but before their retirement, defendant's counsel stated:

"And the only other thing I think (sic) could be two proximate causes.

* * *"

The record is silent as to whether the defendant made any written request for an instruction on the possibility of two proximate causes and the court, therefore, had no opportunity to inform counsel of its proposed action upon the request prior to the arguments to the jury. Neither did counsel object specifically, or if the mere mention of the question can be assumed as tantamount to objection he gave no grounds for his objection. Technically, counsel has failed to comply with Rule 51 of the Federal Rules of Civil Procedure requiring "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Nevertheless, we will consider all of counsel's arguments with respect to this omission and to the instructions given.

■ The trial court instructed the jury on negligence and defined proximate cause, with the admonition that there could be no liability without a finding of negligence constituting proximate cause. Under the form of the special verdict, the jury, which had been instructed generally on the subject of causation without objection, could well have found, if the evidence justified, that both parties were guilty of negligence, constituting two proximate causes of the accident. Since defendant did not submit any specific instruction on the subject, did not object to the court's general instruction on proximate cause, and the form of the special verdict provided for the relief sought anyway, defendant's argument is without merit as no prejudice has been shown.

■ Next, defendant contends that the court erred in reading to the jury Civil Air Regulation 60.14(d) and (e). These regulations were stipulated in evidence and the plaintiff relied on a viola-

tion of these rules as constituting negligence on the part of defendant. The Civil Air Regulations provided that these rules apply to aircraft operating anywhere in the United States. There is no conflict with the local rules. It is difficult to perceive why defendant, if it had any objection to the rules being before the jury, stipulated in the first instance to their admission. In any event, no error was committed by the trial court in reading the rules to the jury. This Court stated in Pryor v. Strawn, 73 F.2d 595, 598 (8th Cir. 1934):

"It is well settled that the reading to the jury of a statute which lays down the measure of duty of a defendant is not error. Maryland Casualty Co. v. Cook-O'Brien Construction Co. (C.C.A.8) 69 F. (2d) 462; Sommer v. Carbon Hill Coal Co. (C.C.A.9) 107 F. 230."

 *View and Inspection by Jury*: Finally the defendant submits that the court erred in refusing its request the court and jury be taken to the Flying Cloud Airport to view an aircraft of each type involved. It wanted the court and jury to sit in the pilot's seat to determine from this position the visibility from the respective aircraft. The trial court felt that nothing could be gained by a view and inspection. Indeed, the evidence sought by this excursion was adduced by testimony of two witnesses. The inspection would have had only a cumulative effect and served no additional purpose. The rule is well settled that such a request is within the trial judge's discretion. American Glycerin Co. v. Eason Oil Co., 98 F.2d 479 (10th Cir. 1938), cert. denied 305 U.S. 640, 59 S.Ct. 107, 83 L.Ed. 413 (1938), rehearing denied 305 U.S. 672, 59 S.Ct. 153, 83 L.Ed. 435 (1938). There is no showing of abuse of discretion on the part of the trial court in refusing the view and inspection.

As the case was submitted, the jury resolved the simple questions of negligence and proximate cause against the defendant and there is substantial evidence to justify the verdict.

Finding no prejudicial error, the judgment of the trial court is

Affirmed.