Lawrence S. BLACK et al.,
Plaintiffs,

v.

RIKER–MAXSON CORPORATION
et al., Defendants.

No. 71 Civ. 2448 (IBC).

United States District Court,
S. D. New York.

Aug. 20, 1975.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiffs; Stacy L. Wallach, New York City, of counsel.

Kelley, Drye & Warren, New York City, for defendants; Robert Ehrenbard, Ezra I. Bialik, Patricia A. Martone, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

### I.  Introduction

This litigation brought before us plaintiff Lawrence S. Black ("Black"), president of Black & Company, Inc., a brokerage firm in Portland, Oregon;

plaintiffs Gerald Frank ("Frank") and Albert Starr ("Starr"), clients of Black; defendant Riker-Maxson Corp. ("Riker-Maxson"), a publicly-held company, a conglomerate centered around electronics; defendants Robert Dressler ("Dressler") and S. Marcus Finkle ("Finkle"), during the relevant time period, president and chairman of the board of directors, respectively, of Riker-Maxson. At the opening of trial, plaintiffs agreed to dismiss the action against Dressler.

In January 1968 plaintiffs acquired through a private placement $400,000 face amount in Riker-Maxson 7% convertible notes. Black bought $200,000, and Frank and Starr $100,000 each. In an effort to restructure and refinance the company, Riker-Maxson in the fall of 1968 solicited its noteholders to determine whether they would convert their notes to shares of Riker-Maxson common stock. On December 10, 1968 Black met Finkle for breakfast at the Essex House in New York City to discuss the affairs of the company. No one else was present at that meeting. What was said on that occasion is the sole source of nutriment for this litigation. Plaintiffs allege that during the course of that conversation Finkle made three statements: (1) the earnings of Riker-Maxson would be $3.00 per share, $2.80 per share after full dilution (the "earnings statement"); (2) as chairman of the board, Finkle was not receiving a salary (the "salary statement"); and (3) the company had received a positive reaction from the other noteholders (the "noteholders statement"). Black promptly returned to Oregon and in short order all three plaintiffs converted their notes into common stock. After the exchange the value of the common stock declined

from a range of $35 to $40 per share to about $3 per share.

Plaintiffs subsequently began this action for damages, alleging that the three statements of Finkle were material misrepresentations of fact in violation of Section 10(b) of the Securities Exchange Act of 1934 and of Rule 10b–5 promulgated thereunder. The trial, started June 16, 1975, proceeded on the issue of liability only and, during the course of its deliberations, the Court submitted a special verdict pursuant to Fed.R.Civ.P. 49(a). On June 24, the jury returned a verdict in favor of defendants. Plaintiffs now move for an order granting a new trial of this action pursuant to Fed.R.Civ.P. 59 on the grounds that: (a) the jury delivered a less than unanimous verdict which was accepted by the Court as a unanimous verdict; and (b) the Court's charge to the jury was in error. Defendants have submitted papers in opposition to plaintiffs' motion and renew their own motions during trial for dismissal (at the end of plaintiffs' case) and/or a directed verdict (at the end of the trial), on which the Court had reserved decision. For the reasons set forth below, plaintiffs' motion for a new trial is denied, and the Clerk is directed to enter judgment in favor of defendants.

## II.  Motion for New Trial

### (a)  Lack of Unanimity

We consider first plaintiffs' claim concerning the lack of unanimity of the verdict. At the close of trial, and with the approval of all parties, we submitted to the jury a special verdict form consisting of nine questions.[1]  Their an-

---

1. Those questions were, in full, as follows: 1. Do you find that instrumentalities of interstate commerce were used? 2. Do you find that Finkle at a breakfast meeting in December 1968 stated to plaintiff Black: (a) The earnings of Riker-Maxson Corporation would be $3.00 per share, $2.80 per share after full dilution? (b) As Chairman of the Board, Finkle was not receiving a sal-

ary? (c) That the company had received a positive reaction from the other noteholders? 3. If you answered "Yes" as to any part of Question 2, list below any statement which you determine to be a misrepresentation (you may refer to them as "2(a)", "2(b)", and "2(c)"). 4. As to any statement listed in your answer to Question 3, do you find that any of them were about mate-

swers were succinct and unambiguous.[2] Question 2 asked whether the jury found that Finkle had made the three statements to Black as Black claimed; the jury reported "opinion divided" as to the earnings and salary statements (questions 2(a) and 2(b), respectively) and "Yes" as to the noteholders statement (2(c)). The jury also reported "opinion divided" as to whether any of those statements was a misrepresentation (question 3). We note that counsel for plaintiffs delayed in making this objection until after the jury had been dismissed. This deprived us of any opportunity to re-submit any appropriate question to the jury had we felt it necessary to do so. Our decision, we are confident, would have been the same.

■ Plaintiffs cite no authority to support their argument that the failure of the jury to answer questions 2(a), 2(b) and 3 constitutes grounds for a new trial; actually the law is to the contrary. The failure by a jury to answer some of the questions in a special verdict does not vitiate an otherwise unanimous verdict where the unanimous answers to the verdict conclusively dispose of the case. *Skyway Aviation Corp. v. Minneapolis, Northfield & Southern Railway Co.*, 326 F.2d 701 (8th Cir. 1964); *Kissell v. Westinghouse Electric Corp., Elevator Division*, 367 F.2d 375 (1st Cir. 1966); *Pacific Indemnity Co. v. McDermott Brothers Co.*, 336 F.Supp. 963, 967 (M.D.Pa.1971).

■ Here, the jury did resolve unanimously sufficient questions to require judgment for defendants on all issues of the case. The jury unanimously decided that Black did not act as the agent for Frank and Starr at the December 1968 breakfast meeting with Finkle (question 7). This finding is amply supported by the record and has not been challenged in the instant motion. Since Black was not acting as the agent for Frank and Starr, they could not have been prejudiced by the lack of unanimity as to any statements made by Black. The jury's unanimous finding on this issue disposes of the claims asserted by Frank and Starr.

■■ The jury also decided unanimously that Finkle made the noteholders statement (2(c)) with no intent to defraud (question 5). While the jury could not decide whether the statement was a misrepresentation (question 3), its finding of lack of intent is conclusive, for intent to defraud is an imperative element of plaintiffs' case. *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1306 (2d Cir. 1973) (en banc). Furthermore, the jury found that the element of causation, also essential to plaintiffs' case, *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1291 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L. Ed.2d 93 (1970), was lacking (question 8). These findings necessarily dispose of plaintiffs' claims with respect to the noteholders statement.

rial facts? If your answer is "Yes", list them below, using the numbers (such as "2(a)", "2(b)", "2(c)") employed in your answer to Question 3. 5. Do you find that any of the statements listed in your answer to Question 4 were made by Finkle with an intent to defraud? If your answer is "Yes", list them below, using the numbers (such as "2(a)", "2(b)", "2(c)") employed in your answer to Question 3. 6. Do you find that Black reasonably relied on any statements listed in your answer to Question 5? If your answer is "Yes", list the statements using the numbers employed in your answer to Question 3. 7. If your answer to Question 6 is "Yes", did plaintiff Black act as the agent for plaintiffs Frank and Starr at the December 1968 breakfast meet-

ing? If so, did Finkle know it at that time? 8. Do you find that the statements listed in your answer to Question 5 as to which you find the plaintiffs reasonably relied were the proximate cause of their damages? If your answer is "Yes", list below the plaintiff or plaintiffs for whom the statements were the proximate cause of damages. 9. Do you find that any of plaintiffs waived their rights? If your answer is "Yes" as to any plaintiff, list him below.

2. Their answers were:
1. Yes. 2. (a) Opinion divided (b) Opinion divided (c) Yes 3. Opinion divided 4. Yes; 2c 5. No 6. Yes; 2c 7. No 8. No 9. Yes; Black, Frank, Starr.

We turn now to the alleged statements on earnings and salary (questions 2(a) and (b)). The jury, unable to decide whether the earnings or salary statements were made, or whether any of the three statements was a misrepresentation (question 3), came to question 4, which asked whether any of the statements listed in answer to question 3 were about material facts. The jury then listed "2(c)" (the noteholders statement) as the only statement they found to be material. Since question 3 referred to each of the alleged statements, and the jury answered only "opinion divided" with respect thereto and proceeded nonetheless to question 4, the most reasonable explanation is that the jury had all three of the statements in mind, and found only 2(c) to be material.

In *Skyway Aviation, supra,* the Eighth Circuit refused to overturn a judgment for plaintiff in an action resulting from a mid-air collision of two light airplanes. Upon conclusion of the trial the court submitted a special verdict to the jury. The jury did not answer the question "Was the operator of [plaintiff's] aircraft negligent?" but did answer "No" to the following question, "If so, was such negligence a proximate cause of the accident?" The trial court concluded that all pertinent questions had been answered and entered judgment for plaintiff. In affirming, the court held,

> It mattered not that the jury was deadlocked on the special verdict's unanswered question with respect to this issue of plaintiff's negligence inasmuch as the jury must have agreed that even if plaintiff's violation of the rules amounted to negligence, it did not constitute a proximate cause of the collision. Plaintiff's negligence has no bearing on the ultimate decision of this case since the finders of fact held there was no causal connection between any negligence of plaintiff and the ensuing collision.

326 F.2d at 704.

Similarly here, the jury must have agreed that regardless of whether the earnings or salary statements were made, and regardless of whether any of the three alleged statements was a misrepresentation, 2(a) and 2(b), the earnings and salary statements, respectively, were immaterial, and that only 2(c), the noteholders statement, was material. This becomes apparent when we turn to the next question, which concerned scienter. If the jury was still bearing in mind all three statements, then its finding of no scienter applied to all three statements, thereby disposing of plaintiffs' case in its entirety. At the very least, it is clear that the jury had already decided that the earnings and salary statements were immaterial and that it was concentrating solely on the issue of the noteholders (as to which the jury was in full accord); therefore, when the jury found no intent to defraud, it clearly referred solely and exclusively to the noteholders. This finding of immateriality as to 2(a) and 2(b) disposes of all of plaintiffs' claims with respect to those statements.

Finally, the jury unanimously found that all plaintiffs had waived their rights (question 9). Like question 1, which concerned interstate commerce, question 9 was independent of Finkle's alleged statements and made no reference to them. Plaintiffs argue that the jury found waiver only with respect to the noteholders statement (2(c)), but this ignores the evidence at trial and the plain language of the verdict. The facts introduced at trial concerned waiver as to all the alleged statements, not any statement in particular. The proxy statement published by Riker-Maxson in March 1969 (Ex. 33) revealed the true state of affairs as to all the alleged misrepresentations; this was nearly 1½ years before Black allegedly complained to Finkle about his salary in August 1970. Question 9 was drafted as a general question applying equally to all the statements; the jury clearly answered it as such.

In *Skyway Aviation, supra,* the court noted that even if the jury had answered the questions most favorably for the losing party, the same conclusion would have resulted because of the jury's other unanimous findings. See also *Gulf Refining Co. v. Fetschan,* 130 F.2d 129 (6th Cir. 1942), *cert. denied,* 318 U.S. 764, 63 S.Ct. 666, 87 L.Ed. 1136 (1943). The same is true here. Even if the jury had answered questions 2(a), 2(b) and 3 with a "Yes" as to each, (the most plaintiffs could have wished for) the result would have been the same. The jury's unanimous answers to the other questions would still be consistent with, and require, a verdict for defendants. The jury unanimously found that Black had not acted as an agent for Frank and Starr, that the noteholders statement was not intended to defraud and had not caused any damage, that the earnings and salary statements were not material, and that all the plaintiffs had waived their rights. Even if every issue in the verdict had been decided in favor of plaintiffs except waiver, the unanimous finding of the jury on that issue alone would require a verdict for defendants.

■ In light of all the above, we determine that plaintiffs are not entitled to a new trial because of the alleged lack of unanimity of the special verdict. We now consider the second ground relied upon by plaintiffs.

### (b) Instructions to the Jury

The second ground raised by plaintiffs in support of their motion is that the Court's instructions to the jury on causation and waiver were in error and fundamentally prejudiced the jury deliberations. Plaintiffs rely solely on *Myzel v. Fields,* 386 F.2d 718 (8th Cir. 1967) and argue that causation and waiver were irrelevant because only rescissional money damages were sought, not the decrease in the value of the stock.

At the outset we note that their instant position on this issue is wholly inconsistent with their position prior to and at trial. Plaintiffs had argued then that their claim was a legal one for money damages only, and that because their claim was a legal one, the defenses of laches, estoppel and waiver were not available to defendants. *Myzel* stands for the proposition, among others, that laches is not applicable in a 10b–5 action tried at law to a jury, 386 F.2d at 742. Plaintiffs relied on *Myzel* to support that same argument before us and distinguished *Marth v. Industrial Incomes, Inc.,* 290 F.Supp. 755 (S.D.N.Y.1968) on the grounds that plaintiffs in *Marth* sought rescission only. See, Plaintiffs Reply Memorandum, pp. 4, 14–16. We had agreed with plaintiffs that laches was not available, *Swan v. Board of Higher Education,* 319 F.2d 56, 59 n. 5 (2d Cir. 1963), and ruled that, regardless of whether estoppel was available, defendants had not established its elements. *Hecht v. Harris, Upham & Co.,* 430 F.2d 1202, 1208 (9th Cir. 1970). However, while recognizing that the Second Circuit has not spoken on the issue, we ruled that waiver is available as a defense in a legal action for money damages. *Royal Air Properties, Inc. v. Smith,* 312 F.2d 210 (9th Cir. 1962); *Hecht v. Harris, Upham & Co., supra.* Plaintiffs now argue that their action was really for rescissional damages all the time, but that nevertheless the jury should not have been charged as to causation and waiver. We disagree.

■ Causation is an essential element of liability in a 10b–5 action. The Second Circuit has referred to "the basic concept that causation must be proved else defendants could be held liable to all the world," *Globus v. Law Research Service, Inc.,* 418 F.2d 1276, 1292 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); see also *Cutner v. Fried,* 373 F.Supp. 4, 12 (S.D.N.Y.1974). Our instructions to the jury were taken word for word from the instructions used by Judge Mansfield in *Globus* and expressly approved by the Court of Appeals. 418 F.2d at 1291. Plaintiffs' arguments on this issue are without merit.

■ Regardless of whether this action is characterized as legal or equitable, the defense of waiver is available. The Second Circuit, as mentioned, has been silent on this issue, but it has been consistently held in other Circuits and within the Southern District that a defendant in an action such as this one should be allowed to present proof on equitable defenses, including waiver. *Hecht v. Harris, Upham & Co., supra; Royal Air Properties, Inc. v. Smith, supra; Occidental Life Insurance Co. v. Pat Ryan & Assoc., Inc.,* 496 F.2d 1255, 1267 n. 9 (4th Cir. 1974); *Marth v. Industrial Incomes, Inc., supra; Pitofsky v. Brucker,* 291 F.Supp. 321 (S.D. N.Y.1966), *Ferguson v. Francis I. duPont & Co.,* 369 F.Supp. 1099 (N.D.Tex. 1974); *Chelsea Associates v. Rapanos,* 376 F.Supp. 929 (E.D.Mich.1974).

■ Moreover, the instructions to the jury on waiver did not refer to, or rely on, the decline in value of the stock, but instead referred to the period between the time when plaintiffs knew, or reasonably should have known, the true facts, and the time when they took action. We specifically told the jury to focus on the mental attitude of the plaintiffs, see *Hecht, supra,* 430 F.2d at 1208. As the court stated in *Royal Air Properties, supra,* 312 F.2d at 213–214, "The purpose of the Securities Exchange Act is to protect the innocent investor, not one who loses his innocence and then waits to see how his investment turns out before he decides to invoke the provisions of the Act."

Plaintiffs' arguments on all these issues are rejected in all respects. We now turn to defendants' renewed motions for dismissal and/or a directed verdict.

### III. Motion for Directed Verdict

Defendants moved during trial for dismissal (at the end of plaintiffs' case) and for a directed verdict (at the end of trial). We reserved decision on both motions and, inasmuch as the jury failed to reach a full conclusion with respect to the earnings and salary statements, we undertake now to deliver our opinion. Defendants' motion to dismiss is denied. Their motion for a directed verdict is, for the reasons set forth below, granted.

■ Even if the statement concerning earnings was made, it was at most an opinion or prediction rather than a statement of fact. Finkle came to the breakfast meeting without notes or papers and the figures did not relate to any specific period of time. See *Rochez Bros., Inc. v. Rhoades,* 353 F.Supp. 795, 798 (W.D.Pa.1973), *vacated on other grounds,* 491 F.2d 402 (3d Cir. 1974); *SEC v. R. A. Holman & Co.,* 366 F.2d 456, 457–458 (2d Cir. 1966). Furthermore the figure assumed the acquisition of another company which never materialized and no evidence was adduced which suggested that the figure itself, considered in the light of that assumption, was false. Certainly there was no evidence even suggesting intent to defraud.

Materiality is also lacking. Professor Murray, defendants' expert witness, testified impressively that no investor would attach any importance to a bare earnings figure without a thorough analysis of the company, including discussion with its operating officers. Finkle, as chairman of the board, was never involved in Riker-Maxson's operations. Cases cited by plaintiffs in pretrial papers to the effect that all statements with respect to a company's earnings are material involved more substantial and generally published forecasts than were present here: *Kaiser-Frazier Corp. v. Otis & Co.,* 195 F.2d 838 (2d Cir. 1952) (a table with text and notes contained in a prospectus which summarized the corporation's sales and earnings since its inception); *Republic Technology Fund, Inc. v. Lionel Corp.,* 483 F.2d 540 (2d Cir. 1973) (an interim financial statement with figures and ta-

bles which was included in a proxy statement); *Marx v. Computer Sciences Corp.*, 507 F.2d 485 (9th Cir. 1974) (earnings forecast contained in a prepared speech, disseminated throughout audience and, later, financial community).

Finkle's earnings figures constituted at best "loose talk" on which it was wholly unreasonable for Black to rely. Riker-Maxson's published reports showed 1967 earnings of only 36¢ before, and 9¢ after, extraordinary items (Ex. 4), and 6 month earnings for 1968 of only 42¢ after extraordinary items (Ex. 32). Black in fact had not relied on the alleged earnings forecast. By March 1969, he knew it had not materialized, yet he did not complain then, nor in August 1970, when he met with Finkle but spoke only about Finkle's salary and not about any earnings figures. It was not until June 1971, when the complaint was filed in this action, more than 2 years after Black knew the facts, that this was raised as an issue. No attempt was ever made by him to confirm the figure (or any of Finkle's alleged statements) in writing after the meeting.

Plaintiffs failed to put forward any evidence that this, or any other statement, caused them any damage. As Professor Murray testified, the stock and warrants received by plaintiffs were worth more on the exchange date than the notes surrendered. The price of Riker-Maxson stock did fall during 1969, but this was not due to any alleged misrepresentation. Rather the stock market in general declined that year and the subordinated notes, had plaintiffs kept them, would have declined as well. See *Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544, 586 (E.D.N.Y.1971).

██ The alleged statement on Finkle's salary, if made, is also insufficient to support a finding of liability. Black testified that it was material to him and that he did in fact rely on it, but, as with the earnings statement, there was no evidence of scienter. Finkle may have been negligent in what he said, but the Second Circuit has consistently held that mere negligence is not enough. *Cohen v. Franchard Corp.*, 478 F.2d 115, 123 (2d Cir. 1973); *Lanza v. Drexel & Co., supra.* And, as we mentioned above with reference to the alleged earnings statement, plaintiffs failed to show that this statement caused any damage.

The jurors showed great discernment. Their close attention throughout the trial and their conscientious approach to their mission thereafter foretold the certainty of their conviction. We have no hesitancy in observing that the total trial record presents evidence which qualitatively and quantitatively falls far short on a number of vital issues, especially the one dealing with intent to defraud, as to which there is at best only a slight reference. What we were presented with was a situation in which nearly every link was missing in the chain of 10b–5 liability. We let the case go to the jury according to the approved practice, *Lindeman v. Textron, Inc.*, 229 F.2d 273, 276 (2d Cir. 1956), but we did so with reservations. Under no circumstances could we have allowed a jury verdict in plaintiffs' favor to stand. Most assuredly, the jury's verdict matches the trial record; each is fully and convincingly supportive of the other—in our humble opinion, they mutually embrace.

Accordingly, for all of the reasons stated above, we make these rulings: the motion by plaintiffs for a new trial is denied in all respects. The motion made by defendants at the close of plaintiffs' case is denied. The motion by defendants at the close of trial for a directed verdict is granted. The Clerk is directed to enter judgment in favor of defendants.

So ordered.