## Murphy, Appellant, *v.* Neely.

438

Argued April 25, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, MAXEY and DREW, JJ.

*Philip A. Campbell,* with him *Victor Frey,* for appellant.

*A. Archer Cross,* with him *J. Ambler Williams,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 29, 1935:

Appellee was the owner of a two-seated airplane without dual control, equipped with the usual instruments, including a floating type gasoline gauge. It was properly inspected on May 27, 1931. Plaintiff, appellant here, was a guest passenger on a trip with appellee who piloted the ship. The guest had no experience with airplanes or flying. The two left Patco Field, Norristown, Pennsylvania, flying directly to Atlantic City, where they landed and witnessed some mass maneuvers of the Army Air Corps, following which they proceeded to Ocean City where a second landing was made. From there they went toward Central Airport, Camden, New

Jersey, but as they were approaching Greenwich, appellee made known to his companion that he intended to land, indicating a near-by field. As they were approaching the field appellee reduced his altitude from 3,000 feet to approximately 250 feet, at which altitude he made one circuit of the field in the course of "dragging the field" or examining the surface preparatory to landing. At this time the ship was flying at a speed of 70 to 75 miles an hour. Appellee was bringing the ship around in a gentle bank to continue this examination of the field, when, three quarters of the way around, in the turning movement, the nose dropped suddenly, and the ship fell almost vertically to the ground, injuring appellant. It was estimated that it was some five seconds from the time the fall began until the ship struck the ground. As the ship was falling appellee cut the ignition switch in order to reduce the fire hazard when it crashed.

At the trial appellant relied upon two alleged tortious acts—making a landing at an improper field contrary to Department of Commerce Regulations, and cutting the switch rather than making an attempt to regain flying control as the ship was dropping. Although appellee had not made a previous landing on this field, the uncontroverted testimony showed that he was thoroughly familiar with the locality; he spent summers in that vicinity, and had passed the field in an automobile two weeks before the accident. The field had been rolled some time prior to May 27th, and presented a hard, smooth, level surface free from ditches, holes or ruts; there were no fences, trees or other obstructions so that the entire forty acres appeared free for landing; and the surface owner waved to appellee as the airplane was flying over the field, indicating his assent to the landing. The opinion of appellant's expert as to the impropriety of the selection of this field was predicated upon hypothetical facts, some not in the record and others utterly inconsistent with the actual situation. It was therefore highly misleading in this and many other matters because of

440

the absence of basic facts to support the opinion. With reference to the altitude of the ship while making the preliminary inspection of the field preparatory to landing, appellant's own expert testified that it was customary to "drag the field" at altitudes as low as from three to twenty-five feet. However, apart from these considerations, the selection of this field and the preliminary inspection were not "substantial factors" in bringing about appellant's injuries: American Law Institute Restatement, Torts, sections 431, 434. The plane fell some distance away from the field. The legal cause was the sudden fall of the airplane, and on the present record it cannot be said that this was brought about by any wrongful conduct of the pilot.

The action of appellee in cutting off the ignition when confronted with an emergency not shown to have been brought about by any tortious conduct upon his part, was not unreasonable: American Law Institute Restatement, Torts, section 296; cf. Smith v. Gross, 113 Pa. Superior Ct. 568 (1934). From the time the airplane started to fall the opportunity for action was very limited and, if cutting the ignition was wrong, it was an error in judgment, particularly in one having only 135 hours flying. Furthermore, as observed by the trial judge, ". . . the evidence is not sufficient to justify one in concluding that there is an accepted general opinion or practice with relation to the advisability of cutting off the ignition when a dive or spin begins as against maintaining motor speed and endeavoring to right the machine, so that the failure to do one or the other cannot be termed negligence, and is nothing more than a permissible exercise of judgment."

Viewed as a whole the record is not sufficient to permit of two reasonable judgments, and the action of the trial judge in entering judgment n. o. v. for the defendant was therefore proper: American Law Institute Restatement, Torts, section 285, comment (e) ; section 434.

Judgment affirmed.