Plewes, Appellant, *v.* Lancaster.

Argued March 20, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*John W. Beyer*, with him *Arnold, Bricker & Beyer*, for appellant.

*Paul A. Mueller*, with him *Bernard M. Zimmerman*, City Solicitor, for appellees.

OPINION BY DITHRICH, J., July 17, 1952:

From the discharge of a rule to show cause why judgment of compulsory nonsuit in this action of trespass should not be stricken off plaintiff brought this appeal. The facts, viewed in the light most favorable to appellant and giving him the benefit of all proper inferences to which he is entitled (*Garvin v. Pittsburgh*, 161 Pa. Superior Ct. 140, 53 A. 2d 906), are sub-

stantially as follows. On October 19, 1947, he was the owner of a one-half interest in a Culver V airplane, a two-passenger low wing monoplane with a tricycle landing gear weighing approximately 1600 pounds. Appellant had been the holder of a private pilot's license since 1943 and was granted a commercial pilot's license on October 9, 1947, ten days before the happening of the accident which is the basis of this suit. He had approximately 340 hours flying experience as a pilot and approximately 700 hours as a flight engineer on a United States Army bomber during World War II. At the time of the accident he was employed as an aeronautical engineer at Wright Field, Dayton, Ohio.

On October 19, 1947, he was flying alone on a return trip from Philadelphia to Dayton and between 7 and 7:30 p.m. approached the Lancaster Airport where he planned to land his plane for the night. It was dark when he reached Lancaster. Before leaving Philadelphia he noted from Airman's Guide, a United States Chamber of Commerce publication, that the Lancaster Airport was listed L-4 under "Lights", which indicated "Beacon, boundary, *obstruction*, and flood" lights. (Emphasis added.) He, however, had not seen a supplement to the guide dated September 30, 1947, and did not think one was available at the time at the Philadelphia Airport. In the supplement under "Domestic Data" there appeared the following: "LANCASTER— LANCASTER ARPT: Drain-pipe on both sides NW/SE strip, mrkd-stay between red flags. Sinkhole extreme E end E/W strip—2 holes S end N/S strip, mrkd. (3-12)." Whether or not he saw the supplement is not material since, as stated by the lower court, "the uncontradicted evidence is that the two holes indicated as marked in the Guide were not lighted to show the rock pile which the plane of plaintiff struck. The entire area of the airport as it then existed was lighted."

As appellant approached the airport it was lighted with white boundary lights placed at regular intervals around the boundary of the entire field and forming a closed loop. There were no lights on the field designating the boundaries of the runways or landing strips, but within the series of boundary lights, at a point that would be reached if the runway had been projected to the boundary, was a green light and at the opposite side of the loop, had the other end of the runway been projected to the opposite boundary, was a corresponding green light. Other systems of two and three green lights designated the presence of two other runways or landing strips, so that a pilot approaching the field could line up either one, two or three lights on one side of the boundary with a corresponding number of lights on the opposite boundary and know that somewhere between the two, in a straight line, there would be a runway or landing strip.

Appellant made the normal approach for landing, circling the field in three 90-degree turns; but, in watching the field and other aircraft in the "pattern", on the turn into the final approach he was unable to orient himself with the green lights which designated the runways or landing strips, but saw there was sufficient landing space on the turf to set his light craft down without any difficulty. He landed at a normal speed of about 50 m.p.h., "rolled", from the impetus of his flight, and taxied for about 400 feet, when, while proceeding at a speed of approximately 30 m.p.h., the plane struck a rock pile 5 feet in diameter and projecting 18 inches above the ground. The rock pile was not lighted nor was there anything to indicate its presence on the field.

The learned court below said: "These facts, it seems to the court, bring the plaintiff by analogy within the well established principle of law, namely, that where a person, having a choice of two ways, one of which

is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover: . . ." The cases relied upon by the learned judge of the court below are clearly and readily distinguishable on the facts. Had appellant's plane skidded and upset as a result of landing off the macadam runway, or if there had been any danger of such a mishap, we would agree that the principle of *Levitt v. B/G Sandwich Shops, Inc.,* 294 Pa. 291, 144 A. 71, would apply; but the only need of a hard-surfaced runway for light aircraft is to provide a safe and convenient landing area in times of inclement weather.

In *Peavey v. City of Miami,* 146 Fla. 629, where a pilot collided with an unlighted steam roller on a runway, the Court said (p. 632) : "Outside the runways, the field was of firm sandy soil covered with grass, *suitable for landing purposes"* (emphasis added), the inference being that it would not only have been proper but desirable for the operator of the airplane to have landed there. The place selected at Lancaster was sufficiently large and adequate in every respect for safe landing had it not been for the unlighted rock pile. In *Magennis v. Pittsburgh,* 352 Pa. 147, 42 A. 2d 449, plaintiffs were held to be guilty of contributory negligence as a matter of law for unnecessarily walking in the cartway of a street where a sidewalk was available. And in *Barth v. Klinck,* 360 Pa. 616, 62 A. 2d 841, the wife-plaintiff was held to be negligent in stepping over a barricade, three feet in height, at either end of which was placed a red light for the purpose of protecting pedestrians and warning them of the dangerous condition.

The applicable principle is clearly and admirably stated in *Garvin v. Pittsburgh,* supra, 161 Pa. Superior Ct. 140, 53 A. 2d 906; where, in reversing judgment entered n.o.v. on the ground of contributory negligence

of plaintiff because he had chosen a dangerous way when he could have taken a safe one, we said (pp. 143, 144) in an opinion by RHODES, P. J.: "We are of the opinion that plaintiff cannot be held contributorily negligent as a matter of law on the ground that he chose a dangerous route when a safe route was available. . . . Neither route was absolutely safe, but *the danger inherent in the route plaintiff took was not so predominant that his choice could be held to constitute contributory negligence as a matter of law.*" (Emphasis added.) See also *Graham v. Reynoldsville Borough,* 132 Pa. Superior Ct. 296, 200 A. 681.

In the operation and control of an airplane it is the pilot's duty to exercise ordinary care. He is not held to the highest degree of care that men of reasonable vigilance or foresight ordinarily exercise in the operation of a plane in making a landing on a runway in an airport, but he is bound only to use ordinary care. *Murphy v. Neely,* 319 Pa. 437, 179 A. 439; *Davies v. Oshkosh Airport, Inc.,* 252 N. W. 602; *Greunke v. North American Airways Co.,* 230 N. W. 618; *Grain Dealers Nat. Mut. Fire Ins. Co. v. Harrison,* 190 F. 2d 726; *Long v. Clinton Aviation Co.,* 180 F. 2d 665. Appellant had a right to assume that the rock pile would be lighted at night, as indicated in the Airman's Guide, *and he was not bound to anticipate that such an obstruction would be permitted on the field without any warning whatsoever of its presence.* "The failure to anticipate negligence which results in injury is not negligence and will not defeat an action for the injury sustained. A party is not bound to guard against the want of ordinary care on the part of another; he has a right to presume that ordinary care will be used to protect him and his property from injury. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act": *Wagner v. Philadelphia Rapid Transit Co.,* 252 Pa. 354, 359,

360, 97 A. 471; *McFadden v. Pennzoil Co.*, 341 Pa. 433, 438, 439, 19 A. 2d 370.

Appellees urge upon us that appellant was a gratuitous licensee and that appellees were, therefore, "under no duty to warn . . . [him] of conditions which exist[ed] outside of the area covered by the license." Restatement, Torts, §342, Comment f. They also urge that the only duty owed appellant by appellees "was to refrain from active negligence." They argue that "At most, appellee was guilty of passive negligence by permitting an obstacle to exist upon the premises. Thus, the rule of nonliability on the part of the possessor of land to a gratuitous licensee for passive negligence is here applicable." But, as stated in the opinion of the learned judge of the court below: "The defendants were the owners and operators of the airport upon which persons came by invitation. The duty imposed upon such owners and operators is clearly set forth in Beck v. Wings Field, Inc., 35 F. Supp. 953 . . . where Judge BARD, at page 955, stated: 'The owner of premises, such as the defendant here, who owned, operated and maintained a commercial landing field for airplanes, upon which persons like the plaintiff came by invitation, express or implied, owes a duty to such persons to maintain the premises in a reasonably safe condition for the contemplated use thereof, and the purposes for which the invitation was extended. The defendant owed a legal duty to the plaintiff to use reasonable care to keep the premises in a reasonably safe condition so that the plaintiff in landing his aircraft would not be unreasonably exposed to any danger.' "

In *Peavey v. City of Miami*, supra, it was held (pp. 637, 638): ". . . the city . . . was required to exercise the same degree of care in the maintenance of its property as is imposed upon others who undertake to render services or furnish accommodations to the public. . . . Therefore, it was the duty of the defendant to see that

the airport was safe for aircraft and to give proper warning of any danger of which it knew or ought to have known; . . ." And "The weight of authority is to the effect that where a municipality or other public authority maintains and operates an airport primarily or mainly as a commercial or revenue-producing enterprise, it acts in a proprietary, as distinguished from a governmental, capacity, and is subject to tort liability in connection therewith, in the absence of any statutory provision to the contrary": 6 Am. Jur. (Rev. Ed.), Aviation, §37.

When appellant was asked why he didn't go up in the air and reorient himself before landing, he answered that it was because he had a "very obvious position to land in" which would have put him well within the boundary lights "and it did not appear necessary to make another circle of the field." Is this, then, a case "where contributory negligence is so clearly revealed that fair and reasonable individuals could not disagree as to its existence"? *Altomari v. Kruger,* 325 Pa. 235, 240, 188 A. 828. In our opinion it is not; therefore it should not have been so declared as a matter of law. *Rodgers v. Shaler Township,* 164 Pa. Superior Ct. 558, 67 A. 2d 806.

What risk, if any, appellant assumed in landing off instead of on the runway after he had lost the green lights was a question of fact for the jury and not one of law for the court. *Murphy v. Neely,* supra. In that case, where the operator of an airplane was alleged to have been negligent in cutting the ignition rather than making an attempt to regain flying speed when the plane was falling, the Court said (p. 440) : ". . . if cutting the ignition was wrong, it was an error in judgment . . . Furthermore, as observed by the trial judge, '. . . the evidence is not sufficient to justify one in concluding that there is an accepted general opinion or practice with relation to the advisability of cutting off

the ignition when a dive or spin begins as against maintaining motor speed and endeavoring to right the machine, so that the failure to do one or the other cannot be termed negligence, and is nothing more than a permissible exercise of judgment.'" So here, if landing on the turf rather than on the macadam was wrong, as the court below held it to be, it was not brought about by any tortious conduct upon the part of appellant. It was nothing more than "an error in judgment."

The same logic applies to appellant's not telephoning from Philadelphia to ask that the flood lights be turned on. In its opinion refusing to make absolute the rule to show cause why judgment of compulsory nonsuit should not be stricken off, the court said: "He knew that defendants had flood lights but did not deem it necessary to avail himself of their use." In all fairness to appellant it should be added that he *did not know* that "they would be put on on request for anybody that wanted to land at night."

Only one other matter, not mentioned in the opinion of the court below, and mentioned here solely because the case must be retried, remains to be passed upon. Appellant offered to prove by an exceptionally well-qualified expert, who among other things had taught student pilots to land at the Lancaster Airport, the approved custom and procedure in the use of landing lights in landing an airplane at night. An objection to the offer was sustained. This, in our opinion, was error. In *Beck v. Wings Field, Inc.,* supra, plaintiff alleged there was a depression in the portion of the flying field where he was attempting to make his landing and that the defendant's maintenance of a public flying field with such a depression unmarked constituted negligence which was the proximate cause of plaintiff's accident. An expert witness was permitted to state whether, in his opinion, the field was a safe

place for airplanes to land and to draw an inference from the fact that the wheels were out of line as the plane moved on the ground prior to reaching the dip in the field. On appeal the judgment of the District Court was reversed by the U. S. Court of Appeals, Third Circuit, 122 F. 2d 114, but on a ground not material to any of the questions raised here. See also *Elder v. Lykens Valley Coal Co.*, 157 Pa. 490, 27 A. 545.

In conclusion it is our considered judgment that plaintiff's alleged contributory negligence was not so clearly established that fair and reasonable persons could not disagree as to its existence and that it was, therefore, error to declare it judicially.

Judgment reversed and a new trial granted.

HIRT and GUNTHER, JJ., dissent.