Lehigh-Northampton Airport Petition

*Edwin K. Kline, Jr.,* for airport authority.

*Oscar J. Tallman,* for controller.

*Donald L. LaBarre,* for county commissioners.

HENNINGER, P. J., June 10, 1958.—Petitioners have submitted to this court a petition for a declaratory judgment upon an agreed stipulation of facts, which are accepted by the court as pleaded and which, for the sake of brevity, are not repeated herein.

The gist of the case is that five municipalities, the Counties of Lehigh and Northampton and the Cities of Allentown, Bethlehem and Easton, have joined in the creation of Lehigh-Northampton Airport Authority for the ownership and development of an airport to serve said counties and cities. The County of Lehigh has been contributing $20,000 per year to the authority, sometimes by yearly resolutions, once by an appropriation of $40,000 over two years and twice by appropriations of $60,000 over three years each. On December 5, 1957, the county commissioners appropriated $160,000 over the years 1958 to 1968 inclusive, payable at specified amounts during specified years. The resolution of the county commissioners authorized the authority to assign anticipated appropriations as security for a loan to match United States Government funds for improvement of the airport. In the past, the use of municipal funds has resulted in appropriations from the United States Government, the Commonwealth of Pennsylvania and from private parties of almost double the amount furnished by the municipalities. For contemplated improvements the United States Government and the Commonwealth of Pennsyl-

vania have appropriated $903,607 on condition that the authority produce before June 30, 1958, 25 percent of the cost as its share. In the event of dissolution or liquidation of the authority, its assets would be divided among the municipalities forming the authority in proportion to their respective contributions.

The parties have asked us to determine: (1) Whether a fourth class county can appropriate money to a joint municipal authority for airport purposes; (2) whether the agreement of December 5, 1957, is binding upon the county as to the appropriation of moneys and as to the right of assignment; and (3) whether said assignment constitutes a pledge of the credit and taxing power of the county.

The county has authority to provide for air navigation facilities (sec. 2201 of the County Code of August 9, 1955, P. L. 323, 16 PS §2201) and to operate and maintain the same ". . . jointly with any city, county, borough, town or township or other political subdivision . . ." and it may lease such joint facilities (section 2205, 16 PS §2205) and may appropriate moneys to assist any city, borough, town, township or other political subdivision, within such county or within any adjacent county to acquire, establish, operate and maintain such facilities: section 2209, 16 PS §2209.

It would seem then that the County Code contemplated the very situation here presented, but there are some unhappy phrases in the section above cited. Section 2201 states that the provision for facilities shall be ". . . in accordance with the provisions of this article . . ." Section 2205 begins: "Any county acquiring land for any aviation purpose may operate and maintain, etc. . . ." Section 2209 permits assistance to named municipalities and to other political subdivisions but does not mention other counties or authorities among the bodies to be aided.

There are several reasons why these infelicities cannot frustrate the plain purpose of the law, namely to enable a group of municipalities to acquire, establish, maintain and operate an airport.

Section 2209 does not state that the county commissioners must appropriate moneys *to* a city, borough, etc. It states that they may appropriate moneys *to assist* any city, borough, etc. If then the county and the other political subdivisions have seen fit to create an authority to accomplish their purposes, appropriation to the authority is *assisting* the other municipalities in that respect.

If section 2205 were so interpreted that "acquiring land" is a condition precedent for a county's cooperation with other municipalities, then the "county" with whom it is authorized to cooperate could not itself cooperate because the original county had already acquired the land and the other would not be "any county acquiring land." Furthermore, section 2205 would then be inconsistent with section 2209 which permits assistance without land ownership.

The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 552, 46 PS §552, provides that acts of assembly shall be construed on the presumption that the legislature does not intend a result that is absurd, impossible of execution or unreasonable, and that it intends the entire act to be effective and certain.

While a municipal authority cannot strictly be called a "political subdivision," it is a creature of one or more political subdivisions and the proprietorship of an authority carries with it a form of ownership in its assets. In our case there is a specific provision that if and when the airport authority shall cease to function, its property shall be divided among the several municipalities who have contributed to its founding and maintenance. To the outside world the authority may be a separate and autonomous entity;

to its creators it is simply a means to an end. Appropriations to the authority, at least for capital purposes, are merely an investment in county assets with an increment of three for one in the instant case.

It can be plausibly contended that a county's acquition of a share in the authority's land is the acquisition of land by the county for aviation purposes, because of the county's reversionary interest, not in the proceeds, but in the very property itself in case of dissolution. The section does not state that the county shall have acquired all the land used or that it shall be the sole owner of such land.

If any further grant of power were required, it is furnished by the Municipality Authorities Act of May 2, 1945, P. L. 382, which provides in part, section 9, 53 PS §311:

"A. Any municipality . . . may transfer or pay over to any Authority with or without consideration, any project . . . or any funds available for building construction or improvement purposes . . . which may be used by the Authority in the construction, improvement, maintenance or operation of any project . . .

"C. This section, without reference to any other law, shall be deemed complete for the acquisition by agreement of projects, as defined in this act, located wholly within or partially without the municipality or municipalities causing such Authority to be incorporated, any provisions of other laws to the contrary notwithstanding, and no proceedings or other action shall be required except as herein prescribed."

It is obvious that subdivision "A" applies to a continuing project, for besides the words construction and improvement it provides for the maintenance and operation of a project.

Under subparagraph "C" one must look no further for power to act, provided the project is within the powers of the municipality. Clearly acquisition, estab-

lishment, maintenance and operation of air navigation facilities are a *project* of a county alone or jointly under sections 2201, 2205 and 2209 of the County Code.

We are convinced then that the device of an authority is a permissible method of accomplishing cooperation of municipalities in the establishment and operation of air navigation facilities under the County Code of 1955, P. L. 323, 16 PS §101 ff., and that the county commissioners may legally appropriate county moneys therefor.

The next problem is whether the county commissioners may appropriate county moneys for years beyond the tenure of the present county commissioners.

McQuillin on Municipal Corporations, 3rd Ed., Vol. 10, §29.101, states the principle succinctly as follows:

"Respecting the binding effect of contracts extending beyond the terms of officers acting for the municipality, there exists a clear distinction in the judicial decisions between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its successors, whereas the latter is not subject to such limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising the power shall have ceased to exist."

The same rule is propounded in 63 C. J. S. 549, §987, and in 37 Am. Jur. §66. This has been the rule recognized by our Pennsylvania Courts. In Graham v. Philadelphia, 334 Pa. 513, our Supreme Court held, page 526:

"Whatever may be the rule in other states, it has been positively established in this jurisdiction that legislative bodies may enter into transactions or agreements binding upon their successors which may require the levying of a tax in the future.

"The City, in dealing with the Gas Works, is acting in a business capacity and its contracts relating thereto are binding upon future City Councils: Baily v. Philadelphia, 184 Pa. 594. There are so many illustrations of this rule in reported cases that to enumerate them would be superfluous. But the Gas Works is unquestionably a public enterprise and we have held that expenditures on or about such municipal business improvements can be met by taxation (see Shirk v. Lancaster City, 313 Pa. 158, 169) just as receipts therefrom can be devoted to current governmental purposes. The gas works, water works, sewerage systems, electric light plants and other business enterprises of a municipality need not be self-sustaining. Therefore if the City may validly appropriate tax monies to the expenses of such enterprises, it may enter into contracts the effect of which may be to give rise to the necessity of a tax levy by future Councils."

That the operation of an airport is a proprietary and not a governmental function seems obvious. In Honaman v. Philadelphia, 322 Pa. 535, it was held that a city was acting in its proprietary capacity in operating a public park. Clearly then the operation of an airport, alone or with others, directly or through an authority, must be an exercise of the city's proprietary power. In fact, our Superior Court in Plewes v. Lancaster, 171 Pa. Superior Ct. 312, 318, quoted with approval from Peavey v. City of Miami, 146 Fla. 629, that when a municipality is engaged in the operation of an airport as a commercial or revenue producing enterprise, it is acting in a proprietary capacity.

Since the County of Lehigh is acting in its proprietary capacity in support and sponsorship of an airport, it may contract for future conduct of the enterprise, even if that binds the County beyond the terms of the contracting Commissioners: Graham v. Philadelphia, supra.

It is to be noted that the period covered by the present resolution is within the 20-year period during which the county bound itself with other municipalities and the authority by contract with the United States Government in 1947 to support and sponsor the airport. On the basis of this agreement, the United States Government has contributed large sums of money. To withdraw support at this time would constitute a breach of faith under that agreement.

Since the project is a proprietary one and the commissioners may, therefore, contract for a period beyond their terms of office, what remedy there might be, were the county to fail to appropriate the necessary moneys from year to year to meet this obligation, does not concern us now. The county has legally bound itself and it may be assumed that each year as its budget is made up it will recognize that obligation just as it does every need then presenting itself.

If there is a proper budget item this year and funds available to meet it, the county has the legal right to appropriate those funds for this year and we can expect them to continue to meet their legal obligations from year to year. See Philadelphia v. Fidelity-Philadelphia Trust Co., 358 Pa. 155, 167.

The agreement between the county and the authority contains the following language:

"SECOND: It is agreed that the Authority shall have the right to assign this agreement to any lending institution for the purpose of immediately securing the sum of One Hundred Sixty Thousand ($160,000.00) Dollars, upon the strength of this Agreement; and in the event of such an assignment and notice thereof to the Municipality, all rights of the Authority hereunder shall be assigned to and transferred to such lending institution.

"THIRD: Nothing herein contained shall be so construed as to impose any liability upon the Munici-

pality to pay any interest upon the monies advanced by the lending institution to the Authority."

The assignment of contracts with municipal corporations has been exercised and recognized so often without question that little authority need be cited. The parties have called our attention to Philadelphia v. Lockhardt, 73 Pa. 211, 216, and we believe no other citation is necessary.

We note that the assignment in no way obligates the county beyond recognizing the assignee as entitled to what would otherwise be paid to the authority. If it be considered a partial assignment because it is as collateral for a loan, the worst possible conclusion would be that the county, a municipal corporation, could insist upon making its payments to the authority. The county, however, has not only received notice of the assignment but has consented thereto. As a result, it would pay anyone but the authority or the assignee at its peril. Furthermore, the assignment is a valid order by the authority to pay to the assignee and since the county has validly consented to it, it could be compelled to pay the assignee in any event: Vetter v. Meadville, 236 Pa. 563, 568.

Consent to the assignment does not in any way bind the county except to recognize the assignee as entitled to any sums that might come due to the authority and, therefore, it is not a pledge of the taxing power of the county. We are dealing with three reputable and responsible parties, the county, the authority and the assignee. Surely the county will each year fulfill its obligations under the contract, the authority cannot and will not try to escape its assignment and the assignee will credit the good faith of the authority and the county. All these are assured without a present pledge of future taxing powers.

Now, June 10, 1958, upon consideration of the facts stipulated by the parties, it is the judgment of this

court that the County of Lehigh is authorized and bound to pay to the Lehigh-Northampton Airport Authority, or to its assignee, the several amounts and at the times specified in the resolution of said county commissioners dated December 7, 1957, and that a payment to the assignee would discharge its obligation or obligations to said authority, and that the agreement to make future payments to said authority or to its assignee is not a pledge of the future taxing power of the county.