UNITED STATES FIDELITY & GUAR-
ANTY COMPANY, Appellant,

v.

AETNA CASUALTY & SURETY COM-
PANY, Appellee.

No. 19564.

United States Court of Appeals
Eighth Circuit.

Dec. 10, 1969.

Boyd Tackett, Shaver, Tackett & Jones, Texarkana, Ark., for appellant; Nicholas Patton, Texarkana, Ark., on brief.

William H. Sutton, Smith, Williams, Friday & Bowen, Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT, Chief Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is a declaratory judgment action brought by the appellant, United States Fidelity & Guaranty Company to determine rights and liabilities under a comprehensive automobile liability insurance policy issued by the appellee, Aetna Casualty & Surety Company. U.S.F.&G. originally filed this motion for declaratory judgment in the Circuit Court of Little River, Arkansas, in connection with an action for wrongful death, personal injury and property damage filed in that court against two U.S.F.&G. insureds. The motion for declaratory judgment alleged that Aetna should be required to join in the defense of that action and should be required to pay a pro rata share of any judgment or settlement. Aetna properly removed the motion for declaratory judgment to the

United States District Court for the Western District of Arkansas. Judge Paul X. Williams, denied the motion for declaratory judgment and held that U.S.F.&G. should be required to pay the entire amount of the settlement in the Little River Circuit Court action. 288 F.Supp. 25. From the District Court's decision, U.S.F.&G. brought this appeal. We affirm.

A review of the factual situation is necessary to an understanding of the legal issues presented on appeal.

During the summer of 1966, Claude Carpenter was a candidate for Lieutenant Governor for the State of Arkansas. Lawrence Fisher owned and was president of Capital Auto Rental and Leasing, Inc., a car rental agency in Little Rock, Arkansas. Capital carried a comprehensive liability insurance policy with Aetna on all automobiles owned by it. The premiums on this policy consisted of an advance payment of a predetermined amount plus an additional payment at the end of the policy period based on variable factors including the wages and gross income of Capital. Fisher, who was a close friend of Carpenter, agreed to purchase a car in Capital's name and loan it to Carpenter for use in his campaign. In connection with the loan of the automobile, Fisher required Carpenter to obtain liability coverage on the vehicle in the amounts of $100,000 per injury and $300,000 per accident. Fisher also made it clear that Carpenter was required to obtain this insurance to protect Fisher, Capital and their insurer, Aetna, from any liability arising from the use of the automobile in the campaign. Carpenter agreed to these conditions and obtained coverage by contacting an agent of U.S.F.&G. and adding an endorsement to a liability policy he already had on some personally owned automobiles.[1] Subsequently, on August 2, 1966, the loaned automobile was involved in a collision while being driven by Pat Bailey, a campaign aide, who the lower court found was acting within the scope of his employment to Carpenter. As a result of this collision, a wrongful death, personal injury and property damage action was filed against Pat Bailey and Claude Carpenter in an Arkansas state court. U.S.F.&G. assumed responsibility for the defense of the state court action but, after discovering the existence of the Aetna policy, sought to have Aetna join in the defense. When Aetna denied all responsibility, U.S.F.&G. brought this action. Between the time this motion for declaratory judgment was removed to the federal court and the time the motion was heard, U.S.F.&G. agreed to settle the wrongful death, personal injury and property action in the state court for $85,092.45. Aetna does not contest the reasonableness of the settlement.

The District Court, after determining that the Aetna policy covered the automobile in question and that Bailey was within the coverage of the policy, found on the basis of Carpenter's agreement with Capital that U.S.F.&G. was not entitled to receive contribution from Aetna.

On appeal, U.S.F.&G.'s basic contention is that the agreement between Carpenter and Capital could not modify the Aetna insurance contract nor affect Bailey's right to indemnity thereunder. Aetna, on the other hand, asserts that the automobile was not covered by their policy, that Bailey was not an insured person within the terms of the policy and that the agreement between Capital and Carpenter prevents U.S.F.&G. from obtaining contribution from Aetna.

■ We affirm the District Court's decision on the basis of the agreement between Carpenter and Capital.

U.S.F.&G.'s contention that the coverage extended by the Aetna policy to the public could not be affected by the agreement between Carpenter and Capital is

---

1. Aetna brought out the fact that Carpenter unintentionally obtained liability insurance with limits of only $50,000 and $100,000. However, this fact is irrelevant to our determination of this case.

not helpful in resolving this dispute. Assuming, as did the District Court, that coverage could not be so limited, a distinction between the rights and obligations of an insurer towards the public as opposed to another insurer or interested party has long been recognized. See, *e. g.*, Amalgamated Casualty Ins. Co. v. Winslow, 77 U.S.App.D.C. 382, 135 F.2d 663 (1943). Such a distinction is inherent in the equitable doctrines of subrogation and contribution relied upon by U.S.F.&G. as bases of recovery.

We return to the central issue: the effect of the agreement between Carpenter and Capital on the right of U.S.F.&G. to obtain contribution from Aetna. U.S.F.&G. concedes that it is precluded from seeking contribution against Aetna through Carpenter since Carpenter had agreed not to look to Capital's insurer. It argues, however, that it can obtain contribution through subrogation to Bailey's rights against Aetna. This argument is logically premised on two further assumptions: that the Carpenter-Capital agreement affected neither (1) the right of Bailey to look to Aetna for indemnity, nor (2) the right of Carpenter's insurer U.S.F.&G. to obtain contribution from Aetna. Without reaching the first question, we find that the Carpenter-Capital agreement precludes U.S.F.&G. from seeking contribution from Aetna.

The Carpenter-Capital agreement was intended to protect Capital and more specifically Capital's insurer Aetna from liability resulting from the operation of the vehicle loaned to Carpenter. This agreement was based on valid consideration—the loan of the automobile—and it gave legally enforceable rights to Aetna as a third party beneficiary. Southern Farm Bureau Casualty Ins. Co. v. United States, 395 F.2d 176 (8th Cir. 1968); Acme Brick Co. v. Hamilton, 218 Ark. 742, 238 S.W.2d 658 (1961); Southern Surety Co. v. Phillips, 181 Ark. 14, 24 S.W.2d 870 (1930). U.S.F.&G. apparently recognizes that some third

party rights have been created when they concede that Carpenter could not look to Aetna for indemnity. It attempts to limit the scope of these rights, however, by arguing that it, as Carpenter's insurer, can look to Aetna for contribution where someone other than Carpenter himself is apparently covered under both policies. Such an interpretation of the agreement between Carpenter and Capital would unnaturally distort the agreement and vitiate the intended meaning.

We read this agreement as protecting Aetna from exposure while Carpenter had use of the automobile, not merely when Carpenter was personally driving. Corollary to this interpretation, the insurance obtained by Carpenter with U.S.F.&G. was intended to protect not only Carpenter and his permittees, but also Capital and its insurer Aetna. In this setting, it would be unfair and unjust to allow U.S.F.&G. to obtain contribution from Aetna regardless of whether Carpenter or his permittee incurred the original liability.

Courts have long recognized that where one party has agreed with another to obtain insurance for their mutual protection, the insurer will not be allowed to recover its losses from the non-insured party by means of subrogation or indemnity. American Fidelity and Casualty Company v. Simmons, 253 F.2d 634 (4th Cir. 1958); War Emergency Co-op Ass'n v. Widenhouse, 169 F.2d 403 (4th Cir.), cert. denied, 335 U.S. 898, 69 S.Ct. 300, 93 L.Ed. 433 (1948). In *Simmons*, the lessee agreed to carry a liability insurance policy on the leased vehicle. The policy excluded from coverage the owner, lessor or driver of the hired vehicle. Lessee's insurance company paid a judgment obtained by a party injured through the negligence of the driver—lessor's employee—and then sought to be indemnified by the lessor. In affirming the lower court's denial of recovery, the Court stated:

"The lease agreement provided that [the lessee] should procure insurance

to cover this liability, and the reasonable interpretation of the agreement is that it should protect against all liability arising out of the operation, not that it should protect merely the liability of [the lessee] with the right of [the lessee] or the insurer to recover over against [the lessor] the amount of any liability they might be required to pay."

253 F.2d at 636.

Furthermore, it is settled law in Arkansas, as well as elsewhere, that contribution is founded upon principles of equity and that relief is granted only where the equities are equal. Amalgamated Casualty Ins. Co. v. Winslow, *supra*; Taylor v. Joiner, 180 Ark. 869, 24 S.W.2d 326 (1930). In *Amalgamated*, two insurance companies were on record as insuring a taxicab driver against whom a personal injury judgment had been awarded. One insurer had originally issued a policy to the taxi driver, but the driver had switched to the second insurer and discontinued payment of premiums to the first insurer. The accident occurred shortly before the original insurer could officially cancel its policy. The court found both insurers liable to the injured member of the public, but held that as between the two insurers, considerations of fairness dictated that there be no contribution and the entire loss be borne by the second insurer.

Here, considerations of fairness dictate that the entire loss be borne by U.S.F.&G. The Carpenter-Capital agreement was specifically formed to protect Aetna from liability. As a direct result of that agreement, Carpenter procured the U.S.F.&G. insurance and paid the necessary premiums. U.S.F.&G. cannot now be heard to seek contribution from the party it was intended to protect.

The judgment of the lower court is affirmed.