**PACIFIC INDEMNITY COMPANY,**
Plaintiff,

v.

**McDERMOTT BROTHERS COMPANY**
**et al., Defendants.**

v.

**HAUCK MANUFACTURING COMPANY,**
**Third-Party Defendant.**

**Civ. A. No. 68-166.**

United States District Court,
M. D. Pennsylvania.

July 6, 1971.

Candor, Youngman, Gibson & Gault, Williamsport, Pa., for plaintiff.

Walker, Walker & Thomas, Allentown, Pa., Edward H. McGee, Allentown, Pa.,

for defendants McDermott Brothers and John J. McGee.

Furst, McCormick, Lynn, Reeder & Nichols, Williamsport, Pa., for defendant Allied Chemical Corp.

Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, Pa., for third-party defendant Hauck Manufacturing Co.

## OPINION

MUIR, District Judge.

Before the Court is Plaintiff's Motion for a New Trial on certain issues and Judgment in favor of the Plaintiff as to other issues.

This action arose from an airplane accident on January 13, 1966, near Green River, Wyoming,[1] and the only issues at trial concerned the locus of ultimate liability for the aircraft damaged in the crash.

Defendant McDermott Brothers Company ("McDermott Brothers") sold a large piece of equipment to Defendant Allied Chemical Corporation ("Allied") for use in conjunction with a mine owned and operated by Allied near Green River, Wyoming. Under the sales agreement between Allied and McDermott Brothers, the latter was to furnish customer service in the form of an engineer to inspect the equipment prior to initial operation. On January 12, 1966, John J. McGee, President and General Manager of McDermott Brothers, and Alvin Cunningham, an employee of Third-Party Defendant Hauck Manufacturing Company, left Pennsylvania for the Allied Chemical plant at Green River in a 1962 Cessna Skynight 320, N5707X, aircraft piloted by McGee, to fulfill the customer service provisions of the sales contract with Allied. At about noon on January 13, McGee landed the plane at Rock Springs, Wyoming, and telephoned the Allied Chemical plant approximately 45 miles away for directions

1. At trial, counsel for all parties, with the exception of Hauck Manufacturing Company, took the position that Pennsylvania law is the law applicable to all substantive issues in the instant case. Hauck took the position that Wyoming law is applicable, that there was no difference between Pennsylvania and Wyoming law on the legal issues relating to Hauck, and, therefore, that Pennsylvania law should be applied. III N.T. 24–27.

and information concerning the availability of a landing strip or suitable substitute for one near the Allied facility. An Allied employee, Gordon French, informed McGee that on occasion planes had landed near the plant on part of an abandoned East-West roadway. Leaving Rock Springs, McGee obtained a weather report and flew to the plant site on the directions of French. When the plane appeared over the proposed landing site, French, who had positioned himself at the point of intersection of the abandoned East-West roadway and a new unfinished North-South highway, waved to McGee. After a low pass over a portion of the new, graded, unpaved North-South highway, McGee brought the plane down on the North-South roadway. As the craft taxied down the strip, a gust of wind carried it slightly off course and the pilot opted to finish the landing off the highway. The plane taxied across unimproved land until it struck an irregularity in the East-West roadway and was damaged.

Pacific Indemnity Company, which insured the airplane, was substituted as Plaintiff for Continental Aircraft Sales, its insured, in an action against McDermott Brothers and McGee for negligence in piloting the aircraft and against Allied Chemical Corporation for negligence of Allied's employee, French, in suggesting an unsuitable landing site. Joining Hauck Manufacturing Company ("Hauck") as Third-Party Defendant, Allied alleged that Hauck and McDermott Brothers were engaged in a joint venture and that, by virtue of this connection, the alleged negligence of McGee is imputable to Hauck.

Trial of this case was bifurcated. The issues of liability were submitted to the jury on twelve special interrogatories. The jury was able to agree to answers to all but one question.[2]

The jury's special findings included factual determinations that McGee was negligent, but that his negligence was "slight," that McDermott Brothers' possession of the Cessna aircraft on the date of the accident was for the mutual benefit of McDermott Brothers and Continental Aircraft, Plaintiff's insured, that Allied's employee French was not negligent, and that Pacific Indemnity insured the plane for the benefit of Continental Aircraft Sales on the date of the accident.

Although the jury left unanswered the interrogatory relating to causal connection between McGee's "slight" negligence and the accident, their findings nevertheless supply the basis for the legal inferences that neither McDermott Brothers nor Allied Chemical Corporation is liable to Plaintiff for damage to the plane; in Pennsylvania, a mutual benefit bailee is liable for damage to the bailed property caused by the bailee's negligence only where such negligence is "ordinary" or "gross." See, Cody v. Venzie, 263 Pa. 541, 546, 107 A. 383 (1919); Moon v. First National Bank of Benson, 287 Pa. 398, 402, 135 A. 114 (1926); 5 Pennsylvania Law Encyclopedia, Bailment, §§ 10–13. Here, the jury found that McGee's negligence was "slight," and did not rise to the level of "ordinary" negligence. (The jury's special verdict is attached hereto.)

## MOTION FOR NEW TRIAL

The Plaintiff's position is that the jury's special finding that Hauck and McDermott's status at the time of the accident was that of joint venture is sound and should be preserved at a retrial of the issues of negligence and causation with respect to McDermott Brothers. This view is predicated upon the assumption that a new trial is required on these issues. Plaintiff assigns seven grounds for its Motion for a New Trial.

1. *Admission of Insurance Policy Between Pacific Indemnity Company and McDermott Brothers.* A written insurance contract between

---

**2.** The unanswered question was: "Question 4. If the answer to Question 3 ["Was the Defendant John McGee negligent . . . ?"] was 'Yes,' was such negligence a proximate cause of the accident?"

Pacific Indemnity and McDermott Brothers was admitted into evidence over the objection of Plaintiff that the policy was irrelevant because it did not cover the damaged aircraft.

At trial, the testimony disclosed that the policy was purchased by McDermott Brothers to insure a twin-engine Beechcraft 641E airplane, which McDermott Brothers had purchased from Continental Aircraft Sales. As part of the sale, Continental was to take the Cessna aircraft as a trade-in and before delivery modify the new Beechcraft to meet McDermott Brothers' specifications. Since Continental was not in a financial position to undertake the costly modifications of the Beechcraft without assistance, McDermott Brothers agreed to transfer title to the Cessna prior to delivery of the Beechcraft to enable Continental to mortgage the Cessna and obtain sufficient capital to go ahead with modification of the Beechcraft. According to McGee's testimony, under the agreement, McDermott Brothers was to retain possession of the Cessna for use in its business until modification of the Beechcraft was completed. At trial, McDermott Brothers and McGee advanced the theory that one part of the Continental-McDermott Brothers transaction was the oral agreement that Continental would purchase insurance for the Cessna which would cover McDermott Brothers' use in the interim and that McDermott Brothers would purchase insurance on the new Beechcraft, which remained in possession of Continental. Plaintiff assigns as error the admission of the latter insurance policy, which it contends was irrelevant. The document in question was an insurance policy written after the date of the accident; under its terms coverage commenced prior to the date of the accident. Defendants offered it to prove the terms of the transaction between Continental Aircraft, Plaintiff's insured, and McDermott Brothers, and for that purpose it was relevant.

■ 2. *Failure of Jury to Answer Proximate Cause Interrogatory.* The fact that the jury did not return an answer to Question #4 of the Special Interrogatories relating to causal connection, *vel non,* between McGee's negligence and the accident does not necessitate a new trial, because the jury returned findings of fact that the degree of negligence necessary for imposition of liability on McGee and McDermott Brothers was not present.

The jury having found "slight" negligence on McGee's part and a mutual benefit bailment of the Cessna aircraft, the question of the causal relation between McGee's negligence and the accident is plainly academic. A finding either way would not alter the consequences of the jury's other findings. In such circumstances, a new trial is unnecessary. Minneapolis, Northfield & Southern Railway Co. v. Skyway Aviation Corporation, 32 F.R.D. 1 (D.C.Minn. 1963), aff'd., 326 F.2d 701 (8th Cir. 1964); Kissell v. Westinghouse Electric Corporation, Elevator Division, 367 F.2d 375 (1st Cir. 1966).

■ 3. *Failure to Charge on "Choice of Ways Doctrine".* Plaintiff requested the following jury instruction, which was denied:

"(4) Where a person having a choice of two ways, one of which is safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and injury results, is negligent and responsible for the harm that results." [Citing Plewes v. Lancaster, 171 Pa.Super. 312, 90 A.2d 279 (1952)]

Plaintiff contends that failure to give this requested instruction and the failure to submit the issue to the jury was error requiring a new trial.

The jury answered "yes" to Interrogatory #3: "Was the Defendant John McGee negligent in (1) deciding to land at the Allied plant or (2) deciding to land on the North-South road at the Allied plant or (3) in his manner of landing the plane?" The jury went on to find that McGee's negligence was slight, and Plaintiff now argues in the face of a finding of negligence that failure to give the requested instruction relating to the "choice

of ways" doctrine was error so prejudicial as to require a new trial, since, had the instruction been given, the jury might have found McGee's negligence to be more than "slight." This contention is without merit.

■■ It is well-settled that a trial court need not instruct on matters not pleaded and for which there is not substantial evidence. A requested instruction which assumes the existence of disputed facts is improper. Although in the instant case, Plaintiff's allegations [3] of negligence in the pleading do not raise the theory that McGee's negligence consisted in choosing to land at the Allied plant rather than at a landing strip at Green River, Wyoming, fifteen miles from his destination, Interrogatory #3 (a) did present the issue to the jury. The pleadings make no mention of Plaintiff's theory that McGee was negligent in deciding to land on the North-South strip at the Allied plant rather than on the East-West strip, but that issue was placed before the jury by Interrogatory #3(b).

The record is devoid of that quantum and quality of evidence which would necessitate an instruction, beyond a general negligence instruction, on these unpleaded theories of negligence.

Besides being ungrammatical, the requested instruction might have misled the jury. Since the uncontradicted testimony was that at the time of the accident McGee was unaware [4] of the existence of the Green River landing strip, he could not be said to have made a conscious choice between it and the landing site beside the Allied plant. The Allied plant, not Green River (fifteen miles distant), was McGee's destination. Plaintiff's only evidence concerning the nature of the facility at Green River at the time of the accident was testimony bordering on hearsay [5] through its own expert from an annual Aircraft Owners and Pilots Association airport directory for 1966, which gave a description of the facility. That testimony indicated that far from being a superior alternative [6] to the landing site at the Allied plant, the Green River "Airport" was listed in the AOPA directory with the remark: "Caution: runway reported soft and rough."

The Green River facility was located [7] in such a way that an airplane landing there would have been subject to crosswinds. The landing strip was reported unattended,[8] and there was uncontradicted testimony [9] that the Green River landing strip was located five miles outside the town of Green River and was accessible only by foot. The North-South landing strip which McGee chose as his landing site was close to the Allied plant, and his information concerning its condition was not stale. The North-South road was composed of [10] compacted gravel, had just been graded and was flat. It was not soft.

With regard to the East-West landing strip at the Allied plant, the testimony

---

3. Paragraph 12 of the Second Amended Complaint avers: "Upon information and belief, the negligence of the defendant, John J. McGee consisted of:
 (a) Failing to maintain directional control of the aircraft;
 (b) Attempting to land the aircraft in unfavorable weather conditions;
 (c) Failure to use that degree of care which the place, time and circumstances required."

4. III N.T. 58; IV N.T. 112, 131.

5. III N.T. 130. This testimony was admitted over Defendant McGee's objection that it constituted hearsay, although the witness stated he could not, as an expert, rely on the AOPA manual without qualification. See "Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates" (March, 1971), Rule 703.

6. Plaintiff's own expert testified in McGee's position he would have landed at neither the Green River facility nor the Allied plant. VI N.T. 49.

7. III N.T. 174–175.

8. VI N.T. 48; V N.T. 31.

9. III N.T. 172, IV N.T. 43.

10. III N.T. 3, 4; II N.T. 204.

disclosed [11] that this was a blacktop highway not greater than 20 feet in width, which had been abandoned for five years. It was "in a pot-holed condition," [12] "badly broken up" and "pitted". [13] It had a drainage ditch running along its entire length on one side. [14]

Under these circumstances, an instruction phrased in such a way as to suggest that there was a landing site clearly superior to the North-South strip at the Allied plant might have misled the jury, and, for that reason, it was not error to deny Plaintiff's requested instruction.

■ 4. *The Charge on Bailment.* Plaintiff next asserts as error the giving of instructions on the law of bailments and the degrees of negligence. Plaintiff argues that the issue of bailment was not raised in the pleadings and that it was, therefore, error to charge on it. In ¶ 7 of the original complaint, incorporated in subsequent amendments thereto, Plaintiff itself raised the issue:

"7. On or about January 13, 1966, plaintiff corporation bailed said aircraft to defendant McDermott Brothers Company."

The allegation of bailment was denied in the Answer of McDermott Brothers Company and John McGee. Since the negligence of an alleged bailee was in issue, an instruction concerning the types of bailments and the standards of care relating to each type was necessary. Furthermore, Plaintiff took no exception to the charge on the law of bailments, required as a precondition to its assignment as error by F.R.Civ.P. 51. [15]

■ 5. *Admission of Evidence that Continental Aircraft Orally Agreed to Purchase Insurance on the Cessna Covering McDermott Brothers and McGee.*

Plaintiff's fifth assignment of error is the admission of testimony to the effect that, as part of the sales agreement, Whitesell, the President of Flying W Airways and its subsidiaries, which include Continental Aircraft Sales, agreed to purchase insurance on the Cessna aircraft which would cover McDermott Brothers.

The jury's findings on the question of McGee's negligence, alone, preclude recovery by Plaintiff from McDermott Brothers and McGee. It is, therefore, not strictly necessary to the decision on the Motion for a New Trial to decide the questions Plaintiff has raised with regard to the admission of evidence concerning an oral agreement to purchase insurance coverage. The jury's findings [16] that Whitesell, for Continental, had agreed to purchase insurance from the Plaintiff on the Cessna for the benefit of McDermott Brothers and McGee carries the consequence that the Plaintiff-insurer cannot recover from McDermott Brothers and McGee by means of subrogation or indemnity. [17] Notwithstanding the jury's finding on the question of negligence, plaintiff is entitled, in the event of an appeal, to have a ruling on his fifth assignment of error.

Plaintiff contends a "Sales Order" signed only by McDermott Brothers constituted a complete and exclusive statement of the terms of the agreement between Continental and McDermott Brothers and that the admission of the oral evidence was therefore in violation of the parol evidence rule and 12A P.S. § 2–202. This contention is without merit.

The evidence of the oral terms of the agreement between Continental and McDermott Brothers was not inconsistent with the written terms of the agreement,

11. III N.T. 3, 4, 6.

12. III N.T. 4.

13. III N.T. 46, 49.

14. III N.T. 29–30.

15. F.R.Civ.P. 51 provides in part: " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

16. The Answers to Special Interrogatories 10 and 11.

17. See United States Fidelity & Guaranty Company v. Aetna Casualty & Surety Company, 418 F.2d 953 (8th Cir. 1969).

but merely supplemented what was written. Under 12A P.S. § 2–202(b) such evidence is admissible unless "the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." In this case, the writing in question was not intended as a complete and exclusive statement of the terms of the agreement, and the evidence was properly admitted.

■ In Dunn v. Orloff, 420 Pa. 492, 495–496, 218 A.2d 314, 316 (1966), the Pennsylvania Supreme Court stated: "In 1924, the present statement of the Pennsylvania parol evidence rule was enunciated by this Court in the landmark case of Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 126 A. 791 (1924). In Gianni, it was held that if a written agreement was intended by the parties to encompass the entire understanding between the parties, then evidence of a contrary nature, based upon an oral agreement at the time of the execution of the written agreement, was barred in the absence of fraud, accident or mistake. * * * In Gianni, however, the court provided for an exception by saying: 'The writing must be the entire contract between the parties if parol evidence is to be excluded, and to determine whether it is or not the writing will be looked at, and if it appears to be a contract complete within itself . . . it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing' (281 Pa. at 323, 126 A. at 792). From this language has developed an exception to the Rule, i. e. that parol evidence is admissible to explain and supplement a written agreement where such evidence clearly shows

that the writing in question was not intended to and did not properly state the entire agreement between the parties. Boyd Estate, [394 Pa. 225, 146 A.2d 816] supra; Allinger v. Melvin, 315 Pa. 298, 172 A. 712 (1934); Universal Film Exchanges, Inc. v. Viking Theatre Corp., 400 Pa. 27, 161 A.2d 610 (1960). As stated in Boyd: ' . . . the parol evidence rule has never barred the introduction of clear, precise and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that *the agreement as written did not express what the parties intended* and that what the parties intended was omitted from the written agreement by mistake or accident.' (Emphasis supplied)"

The instant case falls within the exception to the parol evidence rule as stated in Dunn v. Orloff, supra, and elaborated in subsequent cases.[18]

Defendants had the burden of showing by 'clear, precise and convincing' evidence that the written memorandum did not constitute the entire agreement. Coal Operators Casualty Co. v. Charles T. Easterby & Co., Inc., 440 Pa. 218, 224, 269 A.2d 671 (1970). In the instant case, that burden was met by the admission of Whitesell, an officer of Continental (in whose shoes Plaintiff stands), in his own testimony at trial[19] that the written bill of sale did not include all the terms of the agreement. Such an admission, without more, brings the case within the exception to the parol evidence rule, Yuhas v. Schmidt, 434 Pa. 447, 456–457, 258 A.2d 616 (1969), but there was ample evidence[20] of a "clear, precise and convincing" nature in addition to Whitesell's admission.

18. Zabek Estate, 441 Pa. 116, 122–128, 269 A.2d 490 (1970); Yuhas v. Schmidt, 434 Pa. 447, 456–457, 258 A.2d 616 (1969); Coal Operators Casualty Co. v. Charles T. Easterby & Co., Inc., 440 Pa. 218, 221–224, 269 A.2d 671 (1970); See also a pre-Dunn decision in this circuit: Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114, 118–119 (3d Cir. 1966).

19. V N.T. 46–47, 68.

20. E. g. IV N.T. 104–105. Although Plaintiff's Exhibit #18, a Flying W Inc. Sales Order for the Beechcraft contained a clause to the effect that, "when accepted by Flying W Inc." the purchase order contained all agreements between the parties, the blanks for Flying W's acceptance are not filled out.

 Plaintiff also contends that it was error to admit the evidence of Whitesell's agreement to purchase insurance on the Cessna for the benefit of McDermott Brothers because "there was no evidence of the authority of the agent to enter into an agreement." At the time in question, Whitesell was President and the chief executive of Flying W. It is hornbook law that an agent may bind his principal by an act within the scope of his apparent authority with respect to a third party who relies in good faith upon the appearance of authority. Restatement, Second, Agency § 8, Sustrik v. Jones & Laughlin Steel Corp., 189 Pa.Super. 47, 50, 149 A. 2d 498 (1959); Revere Press, Inc. v. Blumberg, 431 Pa. 370, 246 A.2d 407 (1968); Zager v. Gubernick, 205 Pa. Super. 168, 208 A.2d 45 (1965). In the *Revere* case, the Court stated "[p]ersons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power." 431 Pa. at 375, 246 A.2d at 410. In the instant case, there was ample evidence to support the conclusion that Whitesell was clothed with apparent authority to enter into a sales agreement with McGee which included the agreement that Continental Aircraft Sales would purchase insurance on the Cessna for the benefit of McDermott Brothers. Whitesell had represented Continental Aircraft Sales in many prior dealings with McGee.[21] On the sale of the Beechcraft, Whitesell's signature alone appeared on the installment sales contract.[22] The record is totally devoid of evidence suggesting that Whitesell lacked actual or apparent authority to enter into sales contracts on behalf of Continental Aircraft Sales.

 6. *Exclusion of French's Statement.* At trial, objections were sustained to plaintiff's offer to prove that Allied's employee French believed it was dangerous to land in a crosswind. Plaintiff offered a written statement[23] of French to show that, as a possessor of land, Allied knew of the existence of a dangerous condition on the land—a crosswind—and failed to warn an invitee.

French was not qualified as an expert in aviation; the only foundation for admitting French's opinion concerning crosswinds was testimony that he had had "some pilot training"[24] and had landed in a crosswind as a student pilot.

Manifestly, this is an insufficient basis for the admission of French's opinion. Moreover, assuming without deciding that a crosswind may be a "dangerous condition on the land" concerning which a possessor of land owes a duty to warn if he knows of its existence, at best French's statements merely carried the implication that he believed it was dangerous to *land* in a crosswind. French's testimony was that he had suggested that McGee "come out and look at the abandoned U. S. 30" and land on a westerly approach.[25] Had McGee done so, he would have landed into the wind. French's statement merely indicated an awareness of the increased risks of landing on a roadway other than the one he had suggested to McGee. It tends to prove not that French knew or believed it was dangerous to land on Allied's land, but only that he believed it was dangerous to land—in a manner in which he had not contemplated McGee would attempt—*in a crosswind* on Allied's land.

In view of the lack of foundation for the statement as an expression of expert opinion and its lack of probative value, it was not error to exclude it.

 7. *Denial of Plaintiff's Instruction on Inference from Allied's*

---

21. V N.T. 47, 108.

22. V N.T. 63.

23. "As little as I know about flying, I wouldn't have landed crosswind."

24. II N.T. 198. It later developed that French had had 16 hours of pilot training and had never had a solo flight. II N.T. 217.

25. II N.T. 199, 200.

*Failure to Produce an Available Witness.* Plaintiff's seventh assignment of error concerns the denial of the following requested instruction:

"Failure to produce informed and competent witnesses militates strongly against the party having the burden of proof if the record does not indicate the witness is unavailable."

 This language was taken from the case Plaintiff cited in support of the point, Bayout v. Bayout, 373 Pa. 549, 96 A.2d 876 (1953), in which the Plaintiff, "the party having the burden of proof," failed to call an available witness. Since the language of the requested instruction refers to the failure of "the party having the burden of proof" to produce an available witness, it would have been error to give the instruction and thereby imply that the defendants had the burden of proof. Furthermore, the rule of law [26] plaintiff attempted to invoke is not operative unless the absent witness has peculiar knowledge or means of knowledge rendering his testimony of importance to the party in a position to call him. Fisher v. Philadelphia Rapid Transit Co., 274 Pa. 90, 117 A. 777 (1922). That is not this case. Here the "key witness" who was not called was an office manager who overheard French's end of the telephone conversation with McGee. His testimony would be of minimal importance.

For these reasons, Plaintiff's Motion for a New Trial is denied. This disposition makes it unnecessary to pass upon Plaintiff's contentions that certain of the jury's findings should be preserved at a new trial.

### APPENDIX

### SPECIAL VERDICT

TO THE JURY:

Base your answers to the following questions on a preponderance of the evidence in this case.

Question 1. Was there an explicit agreement between McGee and Continental Aircraft Sales that ownership of the Cessna should pass to Continental prior to January 13, 1966?

Answer "Yes" or "No".

Answer: Yes

Question 2. Was possession of the Cessna delivered to Continental by McGee prior to the accident?

Answer "Yes" or "No".

Answer: No

Question 3. Was the Defendant John McGee negligent in

(1) deciding to land at the Allied plant or

(2) deciding to land on the North-South road at the Allied plant or

(3) in his manner of landing at the plant?

Answer "Yes" or "No".

Answer: Yes

(Note: If your answer to Question 3 is "No", do not answer Questions 4 and 5)

Question 4. If the answer to Question 3 was "Yes", was such negligence a proximate cause of the accident?

Answer "Yes" or "No".

Answer: _____

Question 5. If your answer to Question 3 was "Yes", was such negligence

slight,

ordinary, or

gross?

Answer "Slight" or "Ordinary" or "Gross". Select only one of the three words.

Answer: Slight

Question 6. Was Gordon French negligent?

Answer "Yes" or "No".

Answer: No

---

26. See, Beers v. Muth, 395 Pa. 624, 151 A.2d 465 (1959); Geiger v. Schneyer, 398 Pa. 69, 157 A.2d 56 (1959); Haas v. Kasnot, 371 Pa. 580, 92 A.2d 171 (1952); Evans v. Philadelphia Transportation Company, 418 Pa. 567, 212 A.2d 440 (1965); Lambert v. Duzy, D.C., 286 F.Supp. 670 (1968).

(Note: If your answer to Question 6 is "No", do not Answer Question 7)

Question 7. If your answer to Question 6 was yes, was such negligence a proximate cause of the accident?
Answer "Yes" or "No".
Answer: _____ .

Question 8. Was there a joint venture between Hauck Mfg. Co. and McDermott Brothers at the time of the accident?
Answer "Yes" or "No".
Answer: Yes

Question 9. Was there a joint venture between Allied Chemical Co. and McDermott Brothers at the time of the accident?
Answer "Yes" or "No".
Answer: No

Question 10. Did Whitesell agree with McGee that Continental Aircraft Sales would insure the Cessna for the benefit of McDermott Brothers and McGee?
Answer "Yes" or "No".
Answer: Yes

Question 11. Did Pacific Indemnity Co. insure the Cessna plane as of the date of the accident for the benefit of Continental Aircraft Sales?
Answer "Yes" or "No".
Answer: Yes

Question 12. Was possession of the Cessna by McDermott Brothers on the date of the accident for
(a) the joint benefit of McDermott Brothers and Continental Aircraft Sales or
(b) for the sole benefit of McDermott Brothers or
(c) for the sole benefit of Continental Aircraft Sales?
Answer "a", "b", or "c".
Answer: "A"

/s/ Anthony C. Barrile
Foreman